Filed 3/10/21  T.C. v. Superior Court CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| T.C.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF MERCED COUNTY,<br><br>    Respondent;<br><br>MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>    Real Party in Interest. | F082091<br><br>(Super. Ct. No. 20JP-00029-A)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Donald J. Proietti, Judge.

T.C., in pro. per., for Petitioner.

No appearance for Respondent.

Forrest W. Hansen, County Counsel, and Jennifer Trimble, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Poochigian, Acting P.J., Detjen, J. and Snauffer, J.

Petitioner T.C. (mother), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rule 8.452) from the juvenile court's orders issued at a contested six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e)(1))[1] terminating her reunification services and setting a section 366.26 hearing for March 18, 2021, as to her now two-year-old son, Roger. Roger's father, also named Roger (father), did not file a writ petition.

Mother contends a delay in the proceedings caused by the COVID-19 pandemic gave her too little time to participate meaningfully in her reunification plan. Consequently, the court's termination of services order was error. We conclude mother forfeited the issue by failing to raise it in the juvenile court and dismiss the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In March 2020,[2] the Merced County Human Services Agency (agency) responded to a call that the parents were being arrested and there was no one to take custody of then 18-month-old Roger. The parents were living in a tack room in a barn in Turlock they rented from the property owner. A neighbor called the police to report a suspicious person with a flashlight on the property. The parents were arrested on outstanding warrants; mother for possession of drug paraphernalia and father for domestic violence. The room was cluttered with garbage and had a foul odor. There were hazards in the room such as car chemicals, sharp tools and rubbish within Roger's reach. Roger was sleeping in a crib without a mattress and lying on top of a small blanket. His crib was located under a shelf stacked with books, boxes and cords, which appeared ready to collapse. Roger was dirty and had a strong odor as if he had not been bathed. Roger was taken into protective custody and placed in foster care.

Social worker Hillary Mansur interviewed the parents at their respective jails. Mother had other children who were with family members in legal guardianship. She

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Subsequent year references are to 2020.

2.

disclosed a history of substance abuse, claiming her drug of choice was " 'everything.' " She appeared agitated and her behavior fluctuated between calm and erratic. She denied having any mental health problems. She was advised of the date and time of the detention hearing. Father admitted he used heroin several times a week and had been using drugs since he was 18. He was arrested for domestic violence but did not complete services.

On March 9, the juvenile court conducted the detention hearing. Father appeared via telephone from county jail. Mother was in custody and did not appear. Father submitted on allegations of parental neglect and failure to provide support. (§ 300, subds. (b)(1) & (g).) The court found prima facie evidence to order Roger detained and set the matter for a combined jurisdictional/dispositional hearing on April 16.

The agency filed its report for the combined hearing on April 9, recommending the juvenile court exercise its jurisdiction over Roger and offer the parents substance abuse, mental health and parenting services. Social workers made multiple unsuccessful attempts to reach mother after her release from custody on March 18 and before the filing of the report. The agency mailed a copy of its report to mother at the Turlock address.

The combined hearing was continued to May 28 and again to July 16 because of the COVID-19 pandemic.

Mother made her first appearance at the hearing on July 16 and the juvenile court ordered her counsel appointed. The parents requested a contested hearing, which was set for August 20. The court ordered the parents to submit to drug testing and advised them to contact social worker Kristen Zambrano to arrange visitation.

On August 20, the parents appeared in court and father requested a *Marsden* hearing.[3] The *Marsden* motion was granted, and new counsel appointed. The court ordered the parents to submit to drug testing and set a contested combined hearing for

---

[3]     *People v. Marsden* (1970) 2 Cal.3d 118.

3.

September 3. Prior to the hearing, mother filed a petition for writ of habeas corpus, seeking dismissal of the detention order and Roger's return to her custody.

On September 3, mother requested a *Marsden* motion, which the juvenile court denied. County counsel requested the court strike the section 300, subdivision (g) allegation as the parents were no longer in custody. The court acknowledged mother's writ of habeas corpus, stating it did not appear to be a remedy available to her but leaving it to mother or her attorney to properly notice the parties and put the matter on for a hearing if mother wanted a formal ruling.

Zambrano testified she attempted to contact mother on March 20 and 24 by telephone but was unsuccessful. She also sent mother a letter at the Turlock address. She attempted again to contact mother in April without success. On June 4, she and social worker Shaunelle Randolph went to the Turlock home and met with father. Randolph had assumed the role of primary social worker and Zambrano was the secondary. She explained that after 60 days the case was transitioned into family reunification so the family could start on their services. Mother was in the tack room and refused to meet with the social workers. Randolph attempted to contact the parents on June 8, July 17, July 28 and again in August but was unsuccessful in reaching them. The parents did not drug test on July 16 as ordered by the court. After the court ordered them to test on August 20, Zambrano arranged for them to be picked up at their home, transported to the testing facility and returned home. However, they did not answer their phones when the driver arrived and did not test after that date. Zambrano was informed at the August 20 hearing that the parents' phone numbers had changed. However, she used their new phone numbers when she texted and left voicemails for them to let them know a driver would transport them for drug testing. The parents had not visited Roger since he was detained.

Mother testified she was arrested on the night of Roger's detention for warrants issued four to five years before for drug possession. Asked why Roger was detained,

mother said he was "stole[n]" because he is "a white baby and babies go for a lot of money." She was out of custody and could take care of Roger.

Mother denied ever having a substance abuse problem or knowing that father was using heroin. She denied talking to Mansur at the jail, claiming Mansur walked out on her because she began to cry. She did not speak to the social workers on June 4 because she was sleeping. She did not have her phone for two weeks after her release and did not know the social workers were attempting to call her. She tried to call them, but they did not respond. She recalled receiving a letter. She did not drug test after the July 16 hearing because she did not have transportation. She did not test on August 20 because the agency did not give her the address for the drug testing facility. She did not receive many of her phone calls because she did not have good reception in the barn. She never received a number, address or voicemail from the agency.

Mansur testified she left her phone number for mother at the jail and mother called her the day after she was released and left a voice message, stating the sheriff's office had her phone. Mother provided Mansur the maternal grandmother's phone number, but Mansur was unable to reach mother.

The juvenile court adjudged Roger a dependent child under section 300, subdivision (b)(1), ordered him removed from parental custody and ordered the parents to participate in reunification services. The court advised the parents services could be terminated after six months if they did not make a sincere effort to participate in them. Mother's plan of reunification required her to complete a parenting class, a mental health evaluation, and a substance abuse assessment, participate in any recommended treatment, submit to random drug testing and actively look for housing.

In its report for the six-month review hearing, the agency recommended the juvenile court terminate reunification services for both parents because they were noncompliant. They were referred to all of the service providers in June but did not maintain contact with the agency and had not participated in any of the services ordered.

Mother had not authorized the agency to communicate with her service providers. She refused to complete the majority of the random drug screens and tested positive for amphetamine and methamphetamine by urine and hair follicle analysis on September 18. She continued to reside at the Turlock address. Because she did not maintain contact with the agency, she did not have any visits with Roger for the first six months after his removal.

The parents requested a contested six-month review hearing, which was conducted on December 1. Social worker Doreen Silva-Gutierrez testified she was assigned Roger's case in mid-September. Mother was asked to drug test on October 9 and October 13. She did not show up on October 9 and tested positive for amphetamine and methamphetamine by urinalysis on October 13. She no-showed again on November 13 and tested positive for amphetamine and methamphetamine on November 20. Father also tested positive for amphetamine and methamphetamine as well as opiates and morphine. Mother texted Silva-Gutierrez on November 25 that she was enrolled in treatment at the Nirvana Drug and Alcohol Treatment Center and authorized the staff to release information about her participation to Silva-Gutierrez. However, Silva-Gutierrez attempted to verify mother's participation in the program on November 30 and the staff were unable to release any information to her. Mother also reported she completed a mental health assessment on September 24, but Silva-Gutierrez was not authorized to receive the results. Mother completed a "Caring for Children Who Have Experienced Trauma" parenting class. Silva-Gutierrez evaluated the barn where the parents were living and found it cleaner than it was when Roger was removed. However, the bathroom was slightly disorganized and dirty and remained a concern. Silva-Gutierrez observed the parents' supervised visits with Roger, which occurred once a week for one hour. They were attentive to Roger and engaging with him. He was responsive to them but separated easily from them at the end of visits. Silva-Gutierrez never saw Roger cry when visitation ended.

6.

Father acknowledged using drugs when he was released from custody. He used methamphetamine and heroin two weeks before the hearing. He enrolled in outpatient substance abuse treatment in mid-November and was being treated with methadone. He and mother cleaned the room they were living in. They painted it and fixed the holes in the walls at their own expense. They were looking for another place to live and were on the list for government housing. He was also applying for jobs. During cross-examination, the juvenile court noticed that father was getting annoyed with the questioning and took a break from the proceedings. Father did not return to complete his testimony and the court suspended his testimony.

Mother testified she last used drugs a week before the hearing. Prior to that, she smoked methamphetamine two to four times a week. She was sober once or twice since the September 3 hearing for three or four days. She refused to say how old she was when she began using methamphetamine until compelled by the court to answer the question. She was 16 when she first tried it and currently 30 years old. Asked why she refused to drug test on July 16, she said she "just wasn't going to go." As for August 21, she did not know. She just "[d]idn't go." She did not show up to test because she knew she would test positive. She did not drug test after the hearing on September 3 because she did not have transportation. She completed a substance abuse assessment through Nirvana sometime around November 25 but was not in treatment because they did not have any beds available for residential treatment. Outpatient treatment was an option, but she was waiting to see how the court ruled. She was trying to stay clean by keeping busy. She did not visit for six months because she did not know that she could. Visits went well; she played with Roger using the toys they brought for him. On cross-examination, she recalled being told at the hearing on August 20 to contact the social worker for visits. She requested visits but the agency wanted to arrange video visits and she did not understand how she could visit a two year old by video. In addition, the agency was "playing around with [father] when it came to the video visits." She did not see the point

7.

in trying if the agency was going to "f*** with both of [them]." She completed a mental health assessment and was working on getting a release signed. She then testified that her insurance was the reason for the delay in starting services. She still believed the agency sold Roger because he was a white baby.

Mother's attorney moved into evidence a certificate showing mother completed 16 hours of a "Caring for Children Who Have Experienced Trauma" class.

Mother's attorney argued reunification services were not ordered until September 3 and mother made "quite a bit of progress" since that time. She completed a mental health assessment, completed a parenting class, cleaned her home and regularly visited Roger. She only had a week of sobriety, which was a good start considering the other steps she had taken to comply with her case plan. Her attorney asked the juvenile court to provide mother an additional six months of services.

The juvenile court noted the parents had not made any progress in addressing their drug abuse issues. "We're now entering into the ninth month since [Roger] was removed from the parents, and we still have a situation where the parents are going their own way with regard to getting help for the most significant, serious problem that's affecting their entire life, with regard to their housing, their ability to be employed, to take proper care of their child, take proper care of themselves, that's their drug dependency, their addictions." The court found the parents failed to participate and make substantive progress in the case plan.

The juvenile court specifically noted the parents' failure to visit for six months, stating, "I do find it incredible, except for the fact that the parents have been involved in their own long-term addictions with heroin, methamphetamine, for such a long period of time, that they can't even see clear to work out an arrangement even during the worst of times with COVID-19 to have contact for nearly six months with their young son, and that is very, very shocking and concerning."

The juvenile court considered whether there was a substantial probability that Roger may be returned to parental custody within six months but was dissuaded from making that finding based on the parents' conduct during the hearing. "The conduct of [father], who was evasive, particularly with regard to his drug use. Mother's evasiveness with regard to her drug use. Refusal to answer. Father's refusal to return for questioning by minor's counsel. All those things suggest to me that they are both seriously still in the grips of their addiction, which is understandable, and they're not ready to move on, and may not be within the next six months."

The juvenile court found by clear and convincing evidence the parents failed to participate regularly and make substantive progress in a court-ordered treatment plan and were provided reasonable reunification services. The court terminated reunification services and set a section 366.26 hearing. This petition ensued.

## DISCUSSION

"When a child is removed from a parent's custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843.) The duration of services depends on the age of the child when initially removed. (§ 361.5, subd. (a)(1).) Court-ordered services must be provided for six months from the dispositional hearing to the parents of a child who was under three years of age when initially removed. (§ 361.5, subd. (a)(1)(B).) The court must advise the parent that reunification services may be terminated after six months if the parent fails to participate regularly in any court-ordered treatment programs or to cooperate or avail him or herself of services provided. (§ 361.5, subd. (a)(3)(C).)

At a six-month review hearing, when a child is under three at the time of his or her initial removal, the court has the discretion to terminate reunification services and set a section 366.26 hearing under certain circumstances. (§ 366.21, subd. (e)(3).) In order to do so, however, the court must find by clear and convincing evidence the parent failed to

9.

participate regularly and make substantive progress in the court-ordered treatment plan. (§ 366.21, subd. (e)(1).) However, if the court finds there is a substantial probability that the child may be returned to parental custody within six months or that reasonable services were not provided, the court must continue services to the 12-month review hearing. (§ 366.21, subd. (e)(3).)

Section 366.21, subdivision (e)(3) does not compel the juvenile court to terminate reunification services and set a section 366.26 hearing if it makes the requisite findings. It merely authorizes the court, in its discretion, to do so. (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 176.)

We review for substantial evidence a court's factual findings supporting an order terminating reunification services at a six-month review hearing. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688.) Under this well-established standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' " (*Id.* at pp. 688–689.) When examining the evidence supporting the trial court's findings, we "bear in mind that clear and convincing evidence was required in the trial court." (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239.)

Mother bears the burden on appeal of establishing that the evidence was insufficient to support the juvenile court's findings. (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001.) And the juvenile court's order, "like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.)

Consistent with the requirements of setting a section 366.26 hearing, the juvenile court found based upon clear and convincing evidence mother failed to participate

regularly and make substantive progress in a court-ordered treatment plan; there was not a substantial probability Roger could be returned to her custody within six months; and the agency offered or provided her reasonable services designed to assist her in overcoming the problems that led to Roger's removal. The court therefore terminated reunification services for both parents and scheduled a section 366.26 hearing.

Here, mother does not challenge the juvenile court's finding the agency provided her reasonable reunification services or there was not a substantial probability Roger may be returned to her custody within six months. Instead, she claims she was unable to comply with her case plan because of delays created by the COVID-19 pandemic. Had the dispositional hearing been conducted sooner than September 3, she reasons, she would have had more time to participate in her case plan. Impliedly, she would have been able to participate regularly in her services plan and make substantive progress. There are two procedural bars, however, that preclude appellate review.

First, mother's petition is inadequate in presenting a claim of error. It is based on the one-sentence statement that the delay in exercising jurisdiction "resulted in very little time to participate in the case plan." A party's "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of the case, is inadequate," and the contention will be found by the appellate court to have been abandoned. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Without citation to authority or to the record, or any discussion supporting her conclusory statement, any challenge to the juvenile court's finding mother failed to participate regularly and make substantive progress must be deemed abandoned. (See *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court has no obligation to "develop the appellants' arguments for them."].)

Second, even if we were to overlook the legal inadequacy of mother's petition, she failed to preserve the issue for appellate review. Mother, who was represented by counsel, did not argue that she was prevented from participating in her case plan because

11.

of delays in conducting the dispositional hearing. In fact, there was no mention of a delay at all. Although mother's attorney observed that services were not ordered until September 3, she argued mother nevertheless made "quite a bit of progress."

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted, superseded on other grounds by statute as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.)

One of the chief reasons for the forfeiture doctrine is that " 'simply … it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' " (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1.) That rationale is pertinent here. Had mother, at the six-month review hearing, questioned the effect of the COVID-19 pandemic and any delay it caused in the proceedings, the agency could have offered evidence on the issue and the court could have considered the parties' respective positions. Since mother did not at any time argue that the delay in proceeding because of the COVID-19 pandemic prevented her from participating in her services plan, she has forfeited any challenge to the juvenile court's finding she failed to regularly participate and make substantive progress. (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1347–1348, fn. 5.) Further, were we to consider her argument on its merits, it would fail.

The record reflects that there were reasons, apart from the COVID-19 pandemic, that limited mother's progress, namely her ongoing drug use. Services were available to mother beginning in June. However, she refused to meet with the social workers or make herself available to them by telephone. Mother was court ordered to drug test in July and August but refused, explaining she "just wasn't going to go." In fact, by her own admission, she was using methamphetamine up until a week before the six-month review

hearing.  Consequently, there is no reason to believe mother's participation and progress would have been greater had the dispositional hearing been conducted before September, giving her more time.

Based upon the record before us, we would conclude substantial evidence supports the juvenile court's finding mother failed to participate regularly and make substantive progress and that she is not entitled to the relief sought in the petition.  However, because she forfeited the issue, her claim of error is not cognizable.  Consequently, we dismiss the petition.

## DISPOSITION

The petition for extraordinary writ is dismissed. This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).