Filed 1/19/22  E.P. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| E.P.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF MERCED COUNTY,<br><br>    Respondent;<br><br>MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>    Real Party in Interest. | F083544<br><br>(Super. Ct. No. 21JP-00007-A)<br><br>**OPINION** |

**THE COURT**[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Brian L. McCabe, Judge.

E.P., in, pro. per., for Petitioner.

No appearance for Respondent.

Forrest W. Hansen, County Counsel, and Jennifer Trimble, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Detjen, Acting P. J., Meehan, J. and DeSantos, J.

Edward P. (father) and S.P. (mother) are an unmarried, intact couple and the parents of now 11-month-old C.P., the subject of this extraordinary writ petition. At a six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e)(1))[1] in November 2021, the juvenile court terminated reunification services and set a section 366.26 hearing for March 3, 2022. Father, in propria persona, seeks an extraordinary writ directing the juvenile court to stay the section 366.26 hearing and either return C.P. to his custody and terminate dependency or continue reunification efforts.[2] We conclude father failed to set forth a claim of juvenile court error as required by California Rules of Court, rules 8.450−8.452.[3] Consequently, we deny father's request for a stay of the section 366.26 hearing and dismiss the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In January 2021, the Merced County Human Services Agency (agency) was contacted regarding newborn C.P. Although mother and C.P. tested negative for drugs and were doing well, the reporting party was concerned the parents' drug abuse and chronic homelessness placed C.P. at risk of harm and neglect. The parents had an active dependency case regarding C.P.'s sibling who was detained in August 2019 after the parents' unsuccessful attempt to treat their methamphetamine use through voluntary family maintenance services. The parents were provided family reunification services but failed to reunify and a section 366.26 hearing was then set for February 24, 2021. Mother also had a nine-year-old child who was in a permanent legal guardianship with the maternal grandmother because of mother's methamphetamine abuse and domestic violence with the child's father.

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Mother also filed an extraordinary writ petition, which is pending review in our case No. F083545.

[3] Rule references are to the California Rules of Court.

Mother told the investigating social worker she had made significant changes in her life in the previous several months. She and father secured stable housing in October 2020. She stopped using methamphetamine in June 2020 when she found out she was pregnant, but relapsed several times between July and November of 2020. She attributed her drug use to homelessness. Having stable housing helped her attain sobriety in November 2020. She began substance abuse treatment through Merced County Behavioral Health and Recovery Services in November 2020 and had her first appointment in December 2020. She attended weekly group and individual sessions and participated in random drug testing. In December 2020, she started weekly counseling sessions through Valley Crisis Center.

Father gave the social worker a tour of the family home which was clean and appropriately furnished. The parents had a bedroom prepared for C.P. with everything needed for a newborn. Father was employed by two different construction contractors. He said he used methamphetamine over a month before and struggled to maintain sobriety. He initiated services with Behavioral Health and Recovery Services in January 2021, but was unable to consistently participate because of his work schedule.

C.P. was taken into protective custody and placed with a relative. The agency determined that voluntary family maintenance services were not a viable option and filed a dependency petition seeking C.P.'s removal under section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling).

The juvenile court ordered C.P. detained and set a jurisdictional hearing for February 25, 2021. In its report for the hearing, the agency informed the juvenile court the parents were involved in a domestic violence incident in September 2020 in a hospital parking lot. Father was observed chasing mother and heard yelling, " 'Come here, f****** bit**!' " The witness saw father's hand raised but could not tell if he struck mother because they were behind tall bushes. A sheriff's deputy filed misdemeanor charges against father.

On February 25, 2021, the juvenile court set a contested jurisdictional hearing for March 24, 2021. Meanwhile, the agency filed its dispositional report, recommending the juvenile court provide the parents reunification services despite their failure to resolve their drug problem and positive results for methamphetamine in early March 2021. The proposed reunification plan required the parents to participate in substance abuse treatment and parenting classes, father to complete a program in anger management and mother a program in domestic violence.

On March 23, 2021, at the readiness hearing, the parents waived their right to a contested jurisdictional hearing, denied the allegations and submitted the matter for the court's ruling. The juvenile court sustained the petition, adjudged C.P. a dependent child as alleged, removed her from parental custody and ordered the parents to complete the proposed services. The court advised the parents that failure to participate regularly in court-ordered treatment or to cooperate and avail themselves of services could result in termination of reunification efforts after six months for good cause. The court vacated the March 24 contested hearing and set an interim review hearing for May 27, 2021, and a six-month review hearing for September 9, 2021.

On May 25, 2021, the juvenile court terminated parental rights in the sibling's case.[4]

The parents appeared at the May 27, 2021 interim review hearing. County counsel informed the juvenile court the parents visited C.P. weekly and visits generally went well except that mother occasionally appeared emotional, and father appeared to be falling asleep. They were participating in services but continued to test positive for methamphetamine. On one occasion, they provided a questionable urine sample and

---

[4] The parents appealed the juvenile court's termination order and we reversed, directing the juvenile court to conduct a new section 366.26 hearing and reconsider its application of the beneficial parent-child relationship exception in light of *In re Caden C.* (2021) 11 Cal.5th 614. (*In re D.P.* (Jan. 12, 2022, F083084) [nonpub. opn.].)

declined to provide another sample. The court encouraged the parents to continue their efforts and to seek assistance from the social worker if they needed help with their drug use.

The agency recommended the juvenile court terminate the parents' reunification services at the six-month review hearing. Although mother completed the domestic violence program, she was unable to articulate the cycle of domestic violence or formulate a safety plan. She completed a parenting class, but displayed odd behavior during visits and appeared to be under the influence of drugs. Her speech was rapid, she cried excessively, and she dozed off while holding C.P. From March through August 2021, she either tested positive for methamphetamine, provided urine samples that did not appear to be urine or failed to test. On two occasions in July, she tested negative. Father's drug test results were the same as mother's results. He attended 14 sessions of a 52-week anger management program but was placed on hold because of excessive missed sessions. He was attending a weekly parenting class. During visits, he fell asleep and used his phone excessively. In addition, the parents had a pattern of avoiding the case worker by not responding to her telephone calls and text messages.

The six-month review hearing was continued and conducted as a contested hearing on November 9, 2021. Meanwhile, the agency received a letter stating father completed the nurturing parenting substance use treatment and recovery classes.

County counsel made an offer of proof at the contested hearing that if called, the social worker would testify that the parents had not drug tested the five times they were requested to do so in September and October of 2021.

Father's attorney made an offer of proof that father accomplished enough to merit continuing his reunification services. Father did not dispute missing the last five drug tests but tested in July with negative results. He also attended parenting and anger management classes. He asked the court not to terminate his reunification services. He

believed there was a likelihood he could successfully complete services if given the chance. He wanted very much to reunify with C.P. and asked the court for that chance.

Mother's offer of proof also stressed her accomplishments and included a request for continued services. She cited her certificates for positive discipline and nurturing parenting classes. She admitted struggling with substance abuse issues and testing positive for drugs a number of times but also participated in substance abuse treatment and tested negative for drugs in July. Like father, she wanted the opportunity to continue her efforts to reunify with C.P.

The juvenile court terminated reunification services and set the section 366.26 hearing. It found it would be detrimental to return C.P. to the parents' custody. It also found by clear and convincing evidence the agency provided them reasonable reunification services, but they failed to participate regularly and make substantive progress in a court-ordered treatment plan. In ruling, the court noted that February 25, 2022, would mark "the 12-month period."[5] Given the parents' history, the court could not find there was a substantial likelihood C.P. would be returned to their custody by that time with continued services.

---

[5] The juvenile court's "12-month period" refers to the limit on reunification services for a child who was under three years of age when initially removed. By our calculation, however, March 23, 2022, marks the 12-month period. Reunification services for a child such as C.P. who was under the age of three when initially removed from parental custody are provided for six months from the dispositional hearing but no more than 12 months from the date the child entered foster care. (§ 361.5, subd. (a)(1)(B).) A child is deemed to have entered foster care on the earlier of the date of the jurisdictional hearing or the date that is 60 days after the date on which the child was initially removed from parental custody. (§ 361.49.) C.P. was initially removed on January 28, 2021. The jurisdiction and disposition hearings were conducted on March 23, 2021. Sixty days from C.P.'s initial removal was March 28, 2021. The juvenile court was therefore authorized to provide the parents reunification services up to September 23, 2021 (six months from the dispositional hearing), but no longer than March 23, 2022 (a year from March 23, 2021, the earlier date).

6.

## DISCUSSION

Father disagrees with the juvenile court's decision to terminate his reunification services. He asserts he has maintained a stable home since October 2020 where he can provide C.P. a safe, secure home with a room of her own. He is working to better himself every day. He acknowledges he struggles daily with his sobriety but will strive to remain sober so that he can reunify with his family.

*Relevant Legal Principles and Standard of Review*

California's dependency system is designed "to protect children from harm and to preserve families when safe for the child." (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.) During the reunification period of a dependency case, the primary focus is on preserving the family by addressing the issues that led to dependency jurisdiction. (*Rita L. v. Superior Court* (2005) 128 Cal.App.4th 495, 507.) That means until reunification services have been terminated, "family reunification is the goal and the parent is entitled to every presumption in favor of returning the child to parental custody." (*Tracy J.*, at p. 1424.) Once reunification services are terminated, however, the focus shifts to finding the child a safe and permanent home. (*Ibid.*)

"When a child is removed from a parent's custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843.) The duration of services depends on the age of the child when initially removed. (§ 361.5, subd. (a)(1).) Court-ordered services must be provided for six months from the dispositional hearing to the parents of a child who was under three years of age when initially removed. (§ 361.5, subd. (a)(1)(B).) The court must advise the parent that reunification services may be terminated after six months if the parent fails to participate regularly in any court-ordered treatment programs or to cooperate or avail him or herself of services provided. (§ 361.5, subd. (a)(3)(C).)

7.

The child's status, and the question of whether services should be extended for an additional period, must be reconsidered no less frequently than every six months. (§ 366, subd. (a)(1); *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1009.)

At each review hearing, "there is a statutory presumption that the child will be returned to parental custody." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.) A court, therefore, must return the child to parental custody at the six-month review hearing unless it finds by a preponderance of the evidence that doing so would "create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e)(1).) A parent's failure to participate regularly and make substantive progress in court-ordered treatment programs constitutes prima facie evidence that return would be detrimental. (§ 366.21, subd. (e)(1).)

If the child is not returned to parental custody, the juvenile court is required to determine whether "reasonable services that were designed to aid the parent … in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent." (§§ 366.21, subds. (e)(8) & (f)(1)(A), 366.22, subd. (a)(1).) "If … the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a [section 366.26 hearing]." (§ 366.21, subd. (e)(3).) The court, however, is not compelled to terminate reunification services and set a section 366.26 hearing if it makes the requisite findings. It simply has the discretion to do so. (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 176.) If, however, "the court finds there is a substantial probability that the child … may be returned to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency [review] hearing." (§ 366.21, subd. (e)(3).)

We review for substantial evidence a court's factual findings supporting an order terminating reunification services at a six-month review hearing. (*Kevin R. v. Superior*

*Court* (2010) 191 Cal.App.4th 676, 688.) Under this standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' " (*Id*. at pp. 688−689.) When examining the evidence supporting the trial court's findings, we "bear in mind that clear and convincing evidence was required in the trial court." (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239.)

*The Extraordinary Writ Petition*

When the juvenile court terminates reunification services and sets a section 366.26 hearing, as occurred here, the parent may challenge the court's rulings by filing an extraordinary writ petition. Rules 8.450−8.452 set forth guidelines pertaining to extraordinary writ petitions. The purpose of these writ petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is appellant's burden to raise claims of reversible error or other defect and present legal argument, citing to the pertinent evidence in the record. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Father does not challenge any of the rulings that resulted in C.P.'s continued placement out of parental custody, the termination of reunification services and the setting of a section 366.26 hearing. Specifically, he does not claim there was insufficient evidence to support the juvenile court's finding it would be detrimental to return C.P. to his custody, that he was provided reasonable reunification services and that there was not

a substantial probability C.P. could be placed in his home by the 12-month review hearing. Consequently, he failed to raise a claim of reversible error. Therefore, his petition does not comply with rules 8.450–8.452 and is inadequate for appellate review.

Even if we were to independently review the record for possible error, we would affirm the juvenile court's rulings. C.P. was removed from the parents mainly because of their unresolved methamphetamine abuse. They had recently failed to reunify with C.P.'s sibling because of their drug use. In addition, mother had already lost custody of another child to a legal guardianship because of her drug use. Nevertheless, the juvenile court gave the parents an opportunity to reunify with C.P. by providing them drug treatment as well as services to address their domestic violence. However, they continued to use methamphetamine and made minimal overall progress in completing their case plan requirements. On that evidence, the juvenile court properly found C.P. could not be returned to the parents' custody without subjecting her to a substantial risk of detriment. Further given the parents' lack of progress up to that point, there was no reason for the juvenile court to believe they could safely parent C.P. in the time remaining before the juvenile court would conduct a 12-month review hearing. Our calculation that the 12-month period would fall on March 23 rather than February 25, 2022 (see fn. 4), does not change our opinion.

We conclude father failed to comply with rules 8.450–8.452 and for that reason dismiss his writ petition. We also deny his request for a stay of the section 366.26 hearing.

## DISPOSITION

The petition for extraordinary writ is dismissed. This opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A). The request for a stay of the section 366.26 hearing is denied.