Filed 5/26/23  N.M. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| N.M.,<br><br>        Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Respondent;<br><br><br>SAN FRANCISCO COUNTY DEPARTMENT OF HUMAN SERVICES AGENCY et al.,<br><br>        Real Parties in Interest. | A167370<br><br>(San Francisco County Super. Ct. Nos. JD21-3273, JD21-3273A, JD21-3273B) |

In this juvenile writ proceeding, N.M. seeks extraordinary relief from the juvenile court's order terminating reunification services with respect to her three young children—Za.M.J. (born October 2018), Zo.M.J. (born June 2020), and V.J. (born April 2021) (collectively, the children or the minors)—and setting a permanency planning hearing pursuant to section 366.26 of the

1

Welfare and Institutions Code.[1]  N.M. argues that the juvenile court erred in failing to extend her reunification services for three additional months to the 18-month mark because she had been compliant with her reunification plan. We deny the petition.

## BACKGROUND

On October 28, 2021, the San Francisco Human Services Agency (Agency) received a referral from a mandated reporter stating that V.J., Jr. (father) committed two separate incidents of domestic violence against N.M. (mother) within the last month.[2]  Mother confirmed that she and father had argued and that he hit her on the head twice in the presence of V.J.  Mother additionally disclosed that, two weeks previously, father had thrown her to the ground, stomped on her, and given her a concussion.  On November 2, 2021, mother reported that she was at a hotel with the children and had ended her relationship with father.  She accepted referrals for a peer parent and domestic violence services from the social worker the next day.  Mother claimed she had no contact information for father, who was homeless.

The social worker spoke with father on November 24, 2021.  He denied any domestic violence and revealed that he had spent the week of November 15 at a hotel with mother and the children.  He described mother as paranoid, stated she was incapable of caring for the children, and reported that they were now no longer in a relationship.  Mother denied she had been with father.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Father's status was elevated to presumed father at a hearing on January 25, 2022.  However, as he is not involved in these writ proceedings, we focus our factual recitation on information relevant to mother's claims.

The social worker spoke with the paternal grandmother on November 29, 2021. The paternal grandmother had witnessed father yelling at mother, and, when the family was recently staying at a San Francisco shelter, she heard mother and father hitting each other when she was on the phone with them. She could hear her grandchildren crying in the background. The paternal grandmother further disclosed that both parents drank alcohol and previously had problems with cocaine. The social worker verified that mother and the minors were at a domestic violence shelter on November 29, 2021. However, when the social worker called the shelter on December 1 to arrange a visit, staff reported that mother had left the program the previous day and that her whereabouts were unknown.

On December 3, 2021, the Agency detained Za.M.J., Zo.M.J., and V.J. at the home of the paternal grandmother where mother had left them. A juvenile dependency petition was filed on December 7, 2021, which alleged, among other things, that the minors were described by subdivisions (b) and (c) of section 300 due to repeated domestic violence between mother and father and both parents' possible substance abuse. The minors were formally detained at the detention hearing on December 8, 2021.[3]

In advance of the jurisdictional hearing, mother denied any substance abuse problem, admitting only past use of marijuana. She expressed interest in domestic violence education for herself and her children. Mother was working and able to meet her basic needs but did not have stable housing.

[3] Jo.J. (born November 2012) and Ja.J. (born October 2011) are maternal cousins of the minors herein. Mother is their legal guardian. Reunification services based on their removal were provided to mother in separate proceedings. Mother also has an older son (born August 2007) who lives with his father and is not involved in this case. Father has two older children (born August 2007 and August 2013) who are not involved in the case.

Both parents were visiting regularly with the children. Mother was reported to be affectionate but was challenged when trying to manage the minors' active behavior. She successfully completed a 12-week parenting class in March 2022. However, during this timeframe, the social worker received a call from relatives stating that the parents were arguing, and others needed to intervene. Mother denied the incident, and father stated it was a simple argument.

The children were placed together with the paternal grandmother on February 9, 2022. At the combined jurisdictional and dispositional hearing on April 4, 2022, the parents submitted to amended allegations, and the juvenile court sustained the amended petition, finding the minors to be persons described by subdivisions (b) and (c) of section 300. The juvenile court declared the minors to be juvenile court dependents and ordered reunification services for both parents.

Mother completed a substance abuse assessment in April 2022 and did not qualify for substance abuse treatment. She was encouraged to continue working with her other providers. Mother completed an eight-week domestic violence support group in May 2022. The provider recommended that she continue to address domestic violence issues with her individual therapist. By the time of the six-month review, initially set for October 2022, mother was residing in a three-bedroom apartment, was working part time as peer support in a substance abuse program, had connected to numerous supportive services, and had created a support network. She was working with a family support specialist on creating a schedule and age-appropriate activities for the children, which she was implementing during visits.

Mother was also participating in weekly phone therapy, which she found helpful. She denied using illegal substances and had created a safety

4

plan to address any urge to use substances in a way that would keep her children and herself safe. Mother reported she was not involved with father and had a safety plan in place should she encounter him. She tested negative four times in random testing but missed eight tests. Mother had advanced to unsupervised visits twice per week. She attended 85 percent of the visits, which were going well. The Agency wanted to see mother continue to demonstrate emotional stability, sobriety, and the ability to protect her children from domestic violence as she transitioned to overnight visits but opined that reunification with mother in the next six months was likely.

Thereafter, however, the Agency received a report that, on September 30, 2022, mother took the children to meet with father at an undisclosed hotel during her unsupervised overnight visitation. Both parents were intoxicated, and mother was threatening to leave the hotel and drive with the children. The reporting party could hear the parents yelling at each other and Zo.M.J. crying uncontrollably. Ja.J. and Jo.J. reported being left home in the care of mother's 15-year-old son during this visit. According to Ja.J., father came to mother's home during visits, and the two adults sometimes argued in front of them. The minor stated: "[N]othing has changed with their situation."

Mother subsequently admitted these allegations, although she denied being drunk or threatening to drive with the children. She stated she and father were " 'figuring things out, whether they would like to be a couple or not.' " Mother had tested positive for cocaine twice (once on September 29, the day before the hotel visit) and missed eight other testing dates in this timeframe. She admitted she might need more help with her substance abuse issues, and the social worker referred her for another assessment. The social worker also referred both parents for couples counseling.

5

Visits were changed back to supervised, and mother cancelled the first visit on November 8. She missed the scheduled substance abuse assessment on November 9. The paternal grandmother reported that the parents had been visiting the children together during father's supervised visitation and were together as a couple. The social worker hoped mother could get "back on track" and be honest. She opined that reunification might still be likely with additional reunification services. The juvenile court extended reunification services to the 12-month mark (February 2023) at the six-month hearing on November 11, 2022.

Prior to the 12-month hearing, the Agency recommended termination of reunification services. On November 14, father disclosed that mother cut him on the face using a box cutter. Several days later, he texted the social worker stating it was his fault for getting hurt because "he put his hands on her." Neither parent wanted to talk about the incident, and both reported they were discussing ways to "keep themselves safe from each other when they have a disagreement." Mother participated in weekly individual therapy through December 2022, although she was "a bit guarded" with information leading to slow progress. According to mother's therapist, they did not address intimate partner violence in their sessions because mother never told the therapist about her relationship issues.

On November 21, 2022, the parenting support specialist closed mother's case due to missed appointments. Between November 2022 and January 6, 2023, mother missed 11 of 12 drug tests and, in her only completed test, tested positive for marijuana. Between January 6 and February 8, 2023, mother missed eight more tests. She entered outpatient substance abuse treatment on December 15, 2022 and then transferred from detox to a 90-day residential program on February 17, 2023 because she

6

continued to use cocaine. The social worker recommended termination of reunification efforts because the parents had "not mitigated the safety threats that led to the children's removal. They [were] inconsistent in engaging with their respective services and not demonstrating prolonged significant behavioral changes to keep the children safe." While she commended them for their recent efforts, the parents would need time to complete their treatment goals and there was no guarantee they would be successful.

The juvenile court agreed. After a contested hearing on March 7, 2023, the court terminated reunification services and set the matter for a permanency planning hearing pursuant to section 366.26 so that permanent out-of-home plans could be established for the children. The court opined that the parents were not demonstrating at that time a capacity to achieve the goals of their case plans if the matter was continued to 18 months and found by clear and convincing evidence there was not a substantial probability the children could be returned within the maximum time allowed. Mother's timely petition followed.

## DISCUSSION

When a dependent child is removed from parental custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family. (§ 361.5, subd. (a).) For a child under three years of age at the time of removal—or who is part of a sibling group where at least one member was under three years old at the time of removal, as was the case here—reunification services are presumptively limited to six months. (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843 (*Tonya M.*).) This is because the " ' "unique developmental needs of infants and toddlers" ' [citation] justifies a greater

7

emphasis on establishing permanency and stability earlier in the dependency process." (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 175.)

As our high court has explained, for the parent of a child under three at the time of removal (or of a qualifying sibling group), the statutory scheme for providing reunification services establishes "three distinct periods and three corresponding distinct escalating standards." (*Tonya M.*, *supra*, 42 Cal.4th at p. 845.) In the first period—a phase from the jurisdictional hearing to the six-month review hearing where services are "presumed"—"services are afforded essentially as a matter of right." (*Ibid.*) In the second period—a phase from the six-month review hearing to the 12-month review hearing where services are "possible"—"a heightened showing is required to continue services." (*Ibid.*) Specifically, a juvenile court must continue the case to the 12-month hearing only if it finds that "there is a substantial probability that the child . . . may be returned to his or her parent . . . within six months or that reasonable services have not been provided." (§ 366.21, subd. (e)(3).) In the third period—a phase from the 12-month review hearing to the 18-month review hearing where services are "disfavored"—services can be continued only under limited circumstances and only if the juvenile court is able to make a number of very specific findings presaging reunification or if it finds that reasonable services have not been provided. (*Tonya M.*, at p. 845; see § 366.21, subd. (g)(1)(A)-(C).)

Specifically, in order to extend services to 18 months (assuming reasonable services have been provided) the juvenile court must find that "there is a substantial probability that the child will be returned to the physical custody of their parent or legal guardian and safely maintained in the home within the extended period of time." (§ 366.21, subd. (g)(1).) Moreover, in order to find such a substantial probability, the court is required

8

to find: (1) "[t]hat the parent or legal guardian has consistently and regularly contacted and visited with the child"; (2) "[t]hat the parent or legal guardian has made significant progress in resolving problems that led to the child's removal from the home"; and (3) that "[t]he parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of their treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 361.21, subd. (g)(1)(A-C).) The 18-month period is calculated from the date the child was initially taken from the physical custody of the parent. (*Id.*, subd. (g)(1).) "The statute explains if these three factors are present, then there was 'a compelling reason for determining [a permanency hearing] is not in the best interests of the child.' [Citation.] It recognizes a parent who still poses a risk of detriment at the 12-month hearing could with additional time successfully rehabilitate and reunify. Nevertheless, the Legislature has set a very high hurdle for continuing the case beyond 12 months." (*A.H. v. Superior Court* (2010) 182 Cal.App.4th 1050, 1059-1060.)

We uphold a juvenile court's findings supporting termination of reunification services if supported by substantial evidence. (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 535.) "When determining whether substantial evidence is present, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or determine where the preponderance of the evidence lies. [Citation.] We merely determine if there is any substantial evidence, contradicted or not, which will support the conclusion of the trier of fact. [Citation.] Substantial evidence is 'reasonable, credible evidence of solid value such that a reasonable trier of fact could make the findings challenged . . . .' [Citation.] The appellant must show the evidence is

insufficient to support the trial court's findings." (*Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1539.)

N.M. asserts in her writ petition that the juvenile court erred in refusing to extend her reunification services to the 18-month mark because she made significant progress in her case plan, engaging in numerous services. In making this argument, however, mother avoids the facts that do not support her position, effectively ignoring our substantial evidence standard of review. Moreover, even if mother's progress on her case plan could be characterized as "significant," all three findings described above must be made in order for a juvenile court to continue services at the 12-month review hearing. Here, the juvenile court found that mother had not demonstrated the capacity and ability to complete the objectives of her treatment plan in the three months remaining until and 18-month review, and substantial evidence supports this determination.[4]

Mother did not simply have a relapse and then immediately get back on track with her case plan. Rather, her conduct at the end of 2022 uncovered a significant substance abuse problem that she had previously failed to disclose, and which appears to have been worsening for some months as she missed numerous drug tests and denied two positive tests for cocaine. And while she may have gained some insight regarding domestic violence during the reunification period, when the Agency decreased its supervision, she was unable to use the tools she had acquired to keep herself and her children out of unsafe situations. Father reported that mother personally committed a serious act of domestic violence against him when they were

---

[4] Because we uphold the juvenile court's termination of mother's reunification services based on this factor, we do not consider whether termination of services might also have been appropriate under the other two findings that must be made to extend services to an 18-month hearing.

engaged in yet another altercation. Given the parents' recent decision to remain a couple, additional domestic violence services, and related services such as couples counseling, would clearly be needed before reunification could be contemplated and the children safely returned to their parents' care.

There is no doubt that the record also discloses many efforts by mother to work on the entrenched issues which led to juvenile court intervention in this case. We, like the Agency, applaud mother for what she has done (and hopefully continues to do) to improve her own life and work toward providing a safe and stable home for herself and her children.[5] However, the juvenile court's conclusion that mother was not demonstrating the capacity to complete her plan and reunify with her children in the next three months is overwhelmingly supported by the evidence.

## DISPOSITION

The petition is denied on the merits. (See § 366.26, subd. (*l*)(1)(C), 4(B).) Because the permanency planning hearing in this matter is set for July 12, 2023, this opinion is final as to this court immediately. N.M.'s request for a stay of the permanency planning hearing is denied as moot.

---

[5] The juvenile court similarly expressed hope that the parents would continue their recent efforts in treatment "for the sake of these three children."

11

BOWEN, J.*

WE CONCUR:

HUMES, P. J.

MARGULIES, J.

A167370

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.