[No. S149248. Dec. 20, 2007.]

TONYA M., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Real Party in Interest.

838

**COUNSEL**

Merrill Lee Toole, under appointment by the Supreme Court, and Helen Yee, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Raymond G. Fortner, Jr., County Counsel, Larry Cory and James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Real Party in Interest.

Jennifer B. Henning; John J. Sansone, County Counsel (San Diego), John E. Philips, Chief Deputy County Counsel, and Katharine R. Bird, Deputy County Counsel, for California State Association of Counties as Amicus Curiae on behalf of Real Party in Interest.

Children's Law Center of Los Angeles and Kristen N. Walker for Minor.

## OPINION

**WERDEGAR, J.**—When a child is removed from parental custody and made a dependent of the court, reunification services generally must be provided to the child's parents. At a six-month review hearing, the court must decide whether to continue or terminate those services. In doing so, should the court consider the likelihood of reunification during the next six months after the hearing, or the likelihood of reunification in such time as remains until a potential 12-month review hearing, even if less than six months? (See Welf. & Inst. Code, § 366.21, subd. (e).) We conclude the latter interpretation of section 366.21, subdivision (e), which ensures faster resolution for the child, is the one most consistent with the Legislature's intent in enacting the juvenile dependency scheme.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts as recited in the Court of Appeal's opinion are essentially undisputed. Petitioner Tonya M. is the mother of I.D., born five weeks prematurely in October 2005. At I.D's birth, he and Tonya M. both tested positive for methamphetamine. Tonya M. admitted to having used drugs throughout her pregnancy and as recently as two days before I.D.'s birth. Real party in interest the Los Angeles County Department of Children and Family Services (Los Angeles County) removed I.D. from Tonya M.'s custody, placed him in foster care, and filed a petition under Welfare and Institutions Code section 300 on behalf of I.D.[1]

By the time of the combined jurisdictional and dispositional hearing on November 28, 2005, Los Angeles County had lost contact with Tonya M. A caseworker had reached her by telephone on November 21 and informed her

---

[1] All further statutory references are to the Welfare and Institutions Code.

of the hearing, but she subsequently failed to keep an appointment with the caseworker and failed to appear at the hearing itself. The court found the allegations of drug abuse to be true and ordered that reunification services be provided to Tonya M., including monitored visitation.

Los Angeles County was still unable to locate or contact Tonya M. when the court held a review hearing in February 2006. As the whereabouts of Tonya M. and I.D.'s father were unknown, Los Angeles County was required to complete a lengthy due diligence process prior to every hearing where their rights could be affected. The six-month review hearing (§ 366.21, subd. (e)) was scheduled for May 1, 2006, but continued to May 30 because the parents had not been given proper notice and Los Angeles County had not established due diligence. When May 30 arrived, the hearing date was again continued, to June 26, for the same reason.

On June 13, 2006, the caseworker received a telephone call informing her that Tonya M. was in custody. On June 26, Los Angeles County received a letter indicating Tonya M. was participating in the Los Angeles County Drug Court program and receiving drug rehabilitation services through MELA Counseling Services (MELA). According to the letter, the in-custody portion of the program had begun on May 26, and Tonya M. was scheduled to be released to a residential treatment program on July 5. Tonya M. appeared at the June 26 continued six-month review hearing, and the matter was put over for a contested hearing on July 24, later continued to August 16, approximately nine months after the combined jurisdictional and dispositional hearing.

Prior to the August 16 hearing, the caseworker reported that Tonya M. had been associating with I.D.'s father, which violated her probation because he was still using drugs. MELA reported that Tonya M. had been admitted to an outpatient drug program on July 13. Her counselor considered her to be "in compliance with program requirements," although she had missed four Alcoholics Anonymous/Narcotics Anonymous meetings, five group counseling sessions, and two scheduled drug tests. Tonya M. had also enrolled in a parenting program through MELA, with an anticipated start day of August 24 and a completion date of November 2.

At the August 16, 2006, contested six-month hearing, both Los Angeles County and the minor's attorney advocated termination of reunification services. In opposition, Tonya M. testified that she had participated in the Impact drug and alcohol treatment program beginning May 26 and had

entered MELA's outpatient drug treatment program after her release from custody in July. She had last used drugs on April 28, the date of her most recent arrest. All her drug tests had been negative since April 28.

Tonya M. visited I.D. once, on August 10, 2006. She sat with him, fed him, played with him, and changed his diaper. This was the only time she had visited him since his detention almost 10 months earlier. She had made previous efforts to obtain visitation, beginning after her July 2006 release from custody. Initially, the foster parents were unavailable to bring the child for a visit. When a visit was finally arranged, Tonya M. missed it because she went to the wrong social services office. Tonya M. testified that when I.D. was first detained, she was made to feel hopeless by the caseworker, who told her she would never get her son back. She decided to straighten her life out because, due to her own childhood experiences, she did not want her son to be adopted.

The parties stipulated that if Tonya M.'s drug rehabilitation counselor were called she would testify that Tonya M. had been "attending her program regularly"; had been "doing very well in her program[,] showing a lot of motivation"; and was "in compliance with the program." The counselor would have further testified that if Tonya M. "ke[pt] up the good work," she could "complete her program in six months."

After hearing the evidence, the court found by a "preponderance of the evidence [that] return of [I.D.] to the physical custody of [Tonya M.] would create a substantial risk of detriment to the safety, protection, physical and emotional well-being of [I.D.]" and that Los Angeles County had provided reasonable services. The court further found "by clear and convincing evidence" that although Tonya M. had made "some progress" to alleviate the problems that led to I.D.'s removal, on balance her progress was "minimal." The court specifically found that Tonya M. had not regularly and consistently visited I.D. and that "even if [she] had visited every week since [her release from custody], this court still could not make a finding that [she] has consistently and regularly visited with [I.D.]" Finally, the court found there was no substantial probability that I.D. would be returned to Tonya M. "by November the 28th, 2006, which would be the [section 366].21[, subdivision (f)] date or the 12-month [review] date," because Tonya M. had not "demonstrated the capacity and ability to complete the objectives of the treatment program and to provide for [I.D.'s] safety, protection, physical and emotional health and special needs." The court ordered reunification services terminated and set a section 366.26 permanency planning hearing for December 12, 2006, to consider termination of parental rights.

In a writ petition, Tonya M. challenged the juvenile court's failure to consider the entire six-month period following the August six-month review hearing, i.e., the period through February 2007 rather than November 2006, in deciding whether reunification services should be continued. In a published opinion, the Court of Appeal denied relief. It acknowledged an existing split between *Dawnel D. v. Superior Court* (1999) 74 Cal.App.4th 393 [87 Cal.Rptr.2d 870] (*Dawnel D.*), which supported Tonya M.'s position, and *Jessica A. v. Superior Court* (2004) 124 Cal.App.4th 636 [21 Cal.Rptr.3d 488] (*Jessica A.*), which supported the juvenile court's approach, and sided with *Jessica A.*

We granted review to resolve this division of authority.[2]

### DISCUSSION

When a child is removed from a parent's custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family. (§ 361.5, subd. (a).) For a child under three years of age at the time of removal, as I.D. was, reunification services are presumptively limited to six months. (§ 361.5, subd. (a)(2).) The child's status, and the question whether services should be extended for an additional period, must be reconsidered no less frequently than every six months. (§ 366, subd. (a)(1); *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1009 [32 Cal.Rptr.3d 89, 116 P.3d 550].) The absolute maximum period for services is 18 months (§ 361.5, subd. (a)), provided the court determines at both a six-month review hearing and a 12-month review hearing that continuation of services is warranted (see § 366.21, subd. (e) [establishing procedures for the six-month review hearing]; *id.*, subds. (f), (g) [establishing procedures for the 12-month review hearing]). We consider here the basis on which a juvenile court should decide at the six-month review hearing whether to order further reunification services, i.e., in deciding whether to continue or terminate services, what future time period it should take into account.

---

[2] We take judicial notice of the fact that since our grant of review earlier this year, the juvenile court has terminated Tonya M.'s parental rights and the Court of Appeal has affirmed termination. (See *In re I.D.* (Sept. 24, 2007, B197101) [nonpub. opn.].) We nevertheless exercise our authority to retain this case for decision in order to resolve the conflict of authority in the Court of Appeal, a conflict that might otherwise escape resolution because of the short time periods involved in adjudicating dependency issues. (See *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1 [110 Cal.Rptr.2d 412, 28 P.3d 151]; *In re Miguel A.* (2007) 156 Cal.App.4th 389, 392 [67 Cal.Rptr.3d 307]; *In re Christina A.* (2001) 91 Cal.App.4th 1153, 1158–1159 [111 Cal.Rptr.2d 310].)

■ We begin with the text of the statute as the best indicator of legislative intent. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927 [22 Cal.Rptr.3d 530, 102 P.3d 915].) ■ The third paragraph of section 366.21, subdivision (e), discussing the decision at the six-month hearing to terminate or extend reunification services for children under three years of age, provides: "If . . . the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a [permanency planning hearing]. If, however, the court finds there is a substantial probability that the child . . . may be returned to his or her parent or legal guardian *within six months* or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency [review] hearing." (Italics added.)

In determining whether this language has a clear meaning or is susceptible of multiple interpretations, we are mindful that " 'the meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context . . . .' " (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 294 [64 Cal.Rptr.3d 661, 165 P.3d 462], quoting *Title Ins. & Trust Co. v. County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148].) Read in context, the phrase "within six months" in section 366.21, subdivision (e) is ambiguous. It may refer literally to the period consisting of the next six months following the date of the six-month review hearing, as Tonya M. contends. Alternatively, it may refer to the (usually six-month-long) period between the six-month review hearing and the 12-month review hearing, as Los Angeles County contends. Given that the phrase appears in the context of describing the juvenile court's decision whether to set a 12-month review hearing, it would have been awkward to substitute "during the period until the 12-month review hearing, if one were to be set," and the Legislature may reasonably have elected to use "within six months" as a suitable shorthand on the assumption that the period in question generally would be, in fact, approximately six months. (See *Jessica A., supra,* 124 Cal.App.4th at p. 645.)

■ As the text alone does not establish the Legislature's intent clearly, we must turn to other sources for insight, including the provision's statutory context, its legislative history, and "the human problems the Legislature sought to address" in adopting the juvenile dependency scheme. (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1018 [22 Cal.Rptr.3d 876, 103 P.3d 276].) Dependency provisions "must be construed with reference to [the] whole system of dependency law, so that all parts may be harmonized." (*In re David H.* (1995) 33 Cal.App.4th 368, 387 [39 Cal.Rptr.2d 313]; accord, *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826]

["One section of the dependency law may not be considered in a vacuum"]; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 253 [19 Cal.Rptr.2d 698, 851 P.2d 1307] [individual dependency statute "cannot properly be understood except in the context of the entire dependency process of which it is part"].) By examining the dependency scheme as a whole, we can better understand the consequences of a particular interpretation, avoid absurd or unreasonable results, and select the interpretation most consonant with the Legislature's overarching goals. (*Commission on Peace Officer Standards & Training v. Superior Court, supra,* 42 Cal.4th at p. 290.)

■ The dependency scheme sets up three distinct periods and three corresponding distinct escalating standards for the provision of reunification services to parents of children under the age of three. During the first period, which runs from roughly the jurisdictional hearing (§ 355) to the six-month review hearing (§ 366.21, subd. (e)),[3] services are afforded essentially as a matter of right (§ 361.5, subd. (a)) unless the trial court makes one of a series of statutorily specified findings relating to parental mental disability, abandonment of the child, or other specific malfeasance (§ 361.5, subd. (b)). During the second period, which runs from the six-month review hearing to the 12-month review hearing (§ 366.21, subd. (f)), a heightened showing is required to continue services. So long as reasonable services have in fact been provided, the juvenile court must find "a substantial probability" that the child may be safely returned to the parent within six months in order to continue services. (§ 366.21, subd. (e).) During the final period, which runs from the 12-month review hearing to the 18-month review hearing (§ 366.22), services are available only if the juvenile court finds specifically that the parent has "consistently and regularly contacted and visited with the child," made "significant progress" on the problems that led to removal, and "demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(A)–(C).) The effect of these shifting standards is to make services during these three periods first presumed, then possible, then disfavored. Additionally, because at each subsequent review hearing the court is statutorily obligated to reevaluate the propriety of future services under the new applicable standard for that hearing (§§ 361.5, subds. (a), (b), 366.21, subds. (e)–(g)), juvenile courts lack the authority to order services extending beyond the next review hearing.

---

[3] In describing the framework established by the juvenile dependency scheme, we have no occasion to address or resolve any statutory inconsistency over the precise timing of this first period. (See *In re Christina A., supra,* 91 Cal.App.4th at pp. 1160–1161 [noting inconsistency between §§ 366, subd. (a)(1) & 366.21, subd. (e), on the one hand, and § 361.5, subd. (a), on the other].)

Given this scheme, the most logical interpretation is for the juvenile court at each step to consider for purposes of ordering services only probable developments in the period for which the services can be ordered. That is, the period for which services can be ordered and the period for which the impact of those services is to be prospectively evaluated should be coterminous. Thus, if at most four months remain until the next review hearing (i.e., the 12-month hearing or 18-month hearing), at most only four months of services can by law be ordered, and the juvenile court therefore should consider only what the impact of *those* four months of services would be on the parent and child, not whether another hypothetical two months of services beyond the next prospective hearing might have a different or additional impact.

This approach is consistent with the Legislature's directive that the periods for reunification services and timing of review hearings are to be determined relative to the child's initial removal into custody or the jurisdictional or dispositional hearing, not the length of previous services or the dates of previous review hearings. (See §§ 361.5, subd. (a), 366.21, subds. (e), (f), (g)(1), 366.22, subd. (a); *Jessica A., supra,* 124 Cal.App.4th at p. 643.) Delays in the timing of one hearing should not affect either the timing of subsequent hearings or the length of services to be ordered.

The legislative history suggests a like result. The language at issue in section 366.21, subdivision (e) was added by Assembly Bill No. 1524 (1995–1996 Reg. Sess.). Existing law failed to "differentiate between the status needs of the very young child with limited parental relationship and that of the older child who has more of an ongoing parent-child and community relationship. As a result, infants and toddlers [had to] remain in foster care for at least one year, even if the parents [made] no concerted effort to re-unify." (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1524 (1995–1996 Reg. Sess.) as amended Jan. 22, 1996, p. 1.) Moreover, "[m]ost cases receive[d] re-unification services for the maximum 18 months." (Assem. Com. on Human Services, 3d reading analysis of Assem. Bill No. 1524 (1995–1996 Reg. Sess.) as amended Jan. 19, 1996, p. 1.) A central purpose of Assembly Bill No. 1524 was to establish a second, expedited track for children under three years of age. As the bill's sponsor, the California Department of Social Services, had argued, "very young children entering the public foster care system require a more timely resolution of a permanent plan because of their vulnerable stage of development. [The sponsor] believes that, given the unique developmental needs of infants and toddlers, moving to permanence more quickly is critical." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1524 (1995–1996 Reg.

Sess.) as amended Aug. 6, 1996, p. 4.) While it does not appear the Legislature considered the precise ambiguity this case illuminates, the legislative recognition that time is of the essence, most especially for the very young, indicates the statute should be read in favor of promoting prompt rather than delayed resolutions.[4]

The vagaries of when a six-month review hearing is set are of no moment to the child when it comes to deciding how much longer he or she must wait for a stable, permanent placement. From the child's perspective, prompt, timely resolution within 12 months matters more than whether a full six months may have passed since the six-month review hearing. Delays in holding the six-month review hearing do nothing to diminish the child's interest in receiving a commitment and a loving home, from whoever is able to provide it, at the earliest possible time.

Conversely, delays in holding the six-month review hearing do nothing to enhance a parent's interest in reunification. There is no rational basis for concluding that a parent whose six-month hearing is delayed to the nine- or 10-month mark should be eligible for an extension to the 15- or 16-month mark of either services or reunification consideration, while another parent whose six-month hearing is timely held must demonstrate a substantial probability of being able to reunite by the 12-month mark. As amicus curiae California State Association of Counties rightly points out, interpreting the scheme as Tonya M. suggests would only create incentives for a parent to interpose delay in holding six- and 12-month review hearings. (Cf. *Jessica A.*, *supra*, 124 Cal.App.4th at p. 644 [rule mandating consideration of full six months would "enable parents to circumvent the stringent requirements they would otherwise have to meet in order to have services continued to the 18-month date"].)[5]

■ Finally, we note this interpretation is consistent with that set out in California Rules of Court, rule 5.710(f)(1)(E). Under that rule, the determination whether a permanency planning hearing is appropriate will depend

---

[4] We have long recognized that providing children expeditious resolutions is a core concern of the entire dependency scheme. (E.g., *In re Josiah Z.* (2005) 36 Cal.4th 664, 674 [31 Cal.Rptr.3d 472, 115 P.3d 1133]; *In re Celine R.* (2003) 31 Cal.4th 45, 59 [1 Cal.Rptr.3d 432, 71 P.3d 787]; *In re Sade C.* (1996) 13 Cal.4th 952, 993 [55 Cal.Rptr.2d 771, 920 P.2d 716].) If this is true of dependency cases in general, it is doubly true for the very young.

[5] In any event, limiting reunification consideration to the time remaining until a timely 12-month review hearing can be held is not inequitable to the parent whose six-month hearing has been delayed. (See *Jessica A.*, *supra*, 124 Cal.App.4th at pp. 644–645.) That parent may well have received extra services by the time of the six-month hearing, as well as a few extra weeks or even months to demonstrate commitment to his or her child and a realistic chance of reunification. Here, for example, Tonya M. had had three additional months by the time of the six-month review hearing to receive drug treatment and show she might be able to provide I.D. the home he needed.

in part on whether there is "a substantial probability that the child may be returned within 6 months or within 12 months of the date the child entered foster care, *whichever is sooner.*" (*Ibid.*, italics added.) The rule, reflecting the Judicial Council's interpretation of the relevant statutes, is "entitled to a measure of judicial deference" and should be accorded great weight unless clearly erroneous. (*Sara M. v. Superior Court, supra,* 36 Cal.4th at p. 1014.) The rule is not clearly erroneous; to the contrary, it accords with the other indicia of legislative intent we have examined.

■ Against these considerations, Tonya M. and *Dawnel D.* offer the text of the statute, which we have already acknowledged is ambiguous, and the theoretical availability of 18 months of services. According to *Dawnel D.*, reading the language of the statute as requiring consideration of the entire next six months—even if that period extends beyond a 12-month review hearing—is consistent with the overall scheme because that scheme allows up to 18 months of services. (*Dawnel D., supra,* 74 Cal.App.4th at p. 399; § 361.5, subd. (a).) The *Dawnel D.* court reasoned, in an argument Tonya M. now echoes, that because 18 months is the true lid on services, consideration of the full next six months in evaluating reunification prospects will not prejudice the child. They are correct that 18 months represents the ultimate lid on services, but, as discussed above, the 18-month period is not undifferentiated. At the six-month review hearing, the juvenile court has no authority to extend services beyond the 12-month review hearing, and at that 12-month review hearing the standard for approving additional services changes. In deciding whether to extend services, a juvenile court should consider only whether, if those services were provided, reunification would be sufficiently probable according to the operable standard (§ 366.21, subds. (e), (g)(1)) between then and the next review hearing. The alternate inquiry—whether those services until the next review hearing, plus additional services that might or might not be ordered at that hearing, would by the end of the full six months create a sufficient probability of reunification—would demand of our juvenile courts the skills of a soothsayer. Their work is difficult enough as is. We decline to read the statute in this fashion.

In urging the rule we here adopt, one leading treatise on dependency law describes *Dawnel D.* as "an anomaly." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2007 ed.) § 2.152[4][a], p. 2-364.) We agree. We disapprove *Dawnel D. v. Superior Court, supra,* 74 Cal.App.4th 393, to the extent it is inconsistent with this opinion.

## DISPOSITION

For the foregoing reasons, the Court of Appeal's judgment is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.