Filed 11/2/23  Mark E. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| MARK E. et al.,<br><br>        Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Real Party in Interest. | A168455<br><br>(Contra Costa County<br>Super. Ct. No. J21-00561) |

Mark E. (Father) and R.A. (Mother) petition this court for extraordinary writ review of a juvenile court order terminating Father's reunification services and setting a selection-and-implementation hearing for their young son.  They argue that the juvenile court abused its discretion when it declined to extend reunification services for Father beyond the statutory limit for providing such services.  We disagree and therefore deny the petitions.

1

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

The minor came to the attention of real party in interest Contra Costa County Children and Family Services Bureau (the Bureau) when he was born in December 2021.  Both he and Mother tested positive for amphetamine and THC, and Mother expressed interest in possibly relinquishing the baby for adoption.  The parents had been homeless until around the time the minor was born, when they secured a hotel room provided by a homeless-assistance organization.  The Bureau in late December 2021 filed a juvenile dependency petition (Welf. & Inst. Code, § 300)[1] alleging that both parents had serious substance-abuse problems that impaired their ability to care for the infant. The minor was ordered detained, and he was placed in a foster home.

The Bureau reported that Mother's parental rights had been terminated for eight other children (seven half-siblings and one full sibling). Father had six older children, the older four of whom he reported he helped raise.  His parental rights were terminated as to at least one of the younger two children.  The Bureau first recommended that neither parent receive reunification services based on previous termination of reunification services and the termination of parental rights as to older siblings and half-siblings. (§ 361,5, subd. (b)(10) & (11).)  The Bureau later recommended that services be granted to Father based on his efforts to achieve sobriety and care for his child.

At a jurisdictional hearing held in April 2022, the juvenile court sustained allegations that the minor was a child described by section 300, subdivision (b) (failure to protect) based on allegations about Mother's serious

---

[1] All statutory references are to the Welfare and Institutions Code.

2

substance abuse. The court also sustained allegations that the minor was described by section 300, subdivision (j) (abuse of sibling), based on allegations that both Mother and Father failed to reunify with the minor's older siblings. At a dispositional hearing also held in April, the juvenile court adjudged the child a dependent minor and placed him in out-of-home care. The court ordered reunification services for Father but bypassed them as to Mother.

Father entered an in-patient treatment program in July 2022 but had left by the time a status-review report was filed in October because he tested positive for an opiate. When the social worker contacted a services organization in October regarding Father's housing search, Father's case manager reported he had not heard from Father since July. Father did participate in eight sessions of dyadic play therapy between June and September to support his attachment to his son, and the baby appeared to make progress in feeling comfortable in Father's care. An assessment revealed that Father had ongoing auditory and visual hallucinations as well as nightmares. He was prescribed medication but stated he did not always take some of them.

The Bureau in October 2022 recommended that Father's reunification services be terminated and that the juvenile court schedule a selection-and-implementation hearing under section 366.26. The Bureau considered Father's compliance with his case plan to be "minimal[]" because he "ha[d] stumbled and ha[d] not been able to demonstrate changed behavior over time in the areas of sobriety, sustained and appropriate housing, insight into the reason [his son] was removed, and transparent mental health treatment and support." The Bureau acknowledged that Father had "taken initial steps to improve his circumstances" and that he was currently living in a sober living

3

environment with programs to support his sobriety. The Bureau was concerned, though, that Father would try to co-parent the minor with Mother, who still faced her own struggles. At the time of the filing of the October 2022 status report, Mother was pregnant, and Father believed he was the father. After Mother gave birth to another boy in late October 2022, the baby was placed in the same foster home as the minor. A separate proceeding was opened for the younger brother.

Father continued to attend dyadic play therapy designed to support the attachment between him and the minor. Father was an active participant, and the minor turned to Father for comfort and engagement. But the foster parent reported that the minor tended to emotionally shut down and be less engaged for a day or so after visits with Father. And the minor's pediatrician reported that the minor's emotional health and well-being suffered after visits with Father.

Father reported that he was sober. He participated in individual and group therapy and also attended Alcoholics Anonymous meetings.

A six-month review hearing scheduled for early December 2022 was continued until mid-February 2023. By the time of the February hearing, Father was still living at the sober-living facility and had not secured permanent housing that would accommodate him, the minor, and the minor's baby brother. The Bureau continued to recommend the termination of reunification services because of Father's slow progress and continued mental-health issues. The Bureau also was concerned about Father's ability to meet the minor's needs and whether he would allow Mother to directly access the child. The Bureau also noted that Father had exhausted the reunification time period for a child under three years old and had received additional services only because of delays in proceedings. The social worker

4

testified at a contested review hearing on two separate days in February 2023, and the matter was continued until mid April.

Father tested negative for drugs in February and March. As of early April, Father was reportedly eager to complete his recovery program and was frustrated when it was explained he still had to complete about two months of counseling in order to finish. A program therapist was concerned about Father's defensiveness and overall attitude but also reported that Father had gained some insight into areas he needed to work on. Father continued to be an active participant in dyadic play therapy with his son.

Following a brief hearing on April 13, the matter was again continued, this time until late June. When the matter was called on June 22 there was insufficient time for witnesses to testify, so the matter was again continued, this time until late July. At the July hearing, the juvenile court ordered six months of reunification services to both parents in the separate proceeding regarding the minor's younger brother. As for the minor's case, the matter was continued until August 10.

The juvenile court on August 10 called the matter as a "continued hearing on the 18-month review." Father's counsel objected to the termination of reunification services. The juvenile court acknowledged that Father "ha[d] been plugging along" but stated that he had exhausted the amount of time he had available to reunify with the minor and did not have the present ability to care for the minor in his home. The court found that a return to parental custody would create a substantial risk of detriment to the minor and that reasonable services had been offered. The court further found there was not a substantial probability of return to parental custody if further services were provided. The court terminated Father's reunification services and scheduled a selection-and-implementation hearing.

DISCUSSION

Father argues that the trial court abused its discretion in denying further reunification services because extraordinary circumstances warranted a continuation of services. We are not persuaded.

We note at the outset that the Bureau never recommended that Father's services be extended at any time throughout the reunification period, which was extended considerably as a result, not of court orders, but of repeated continuances. Because the minor was under three years old when he was removed from his parents, the juvenile court was to provide six, and no more than 12, months of reunification services. (§ 361.5, subd. (a)(1)(B).) Before the first review hearing—originally scheduled to take place when the minor was over six months old—the Bureau recommended that services be terminated. The court never affirmatively extended the six-month reunification period. It simply never ruled on the Bureau's request to terminate services until after repeated continuances pushed the hearing out more than 18 months. (See *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 847 ["vagaries" of when a review hearing is set "are of no moment to the child when it comes to deciding how much longer he or she must wait for a stable, permanent placement"].)

Thus, the August 2023 hearing—held 20 months after the minor was detained and 16 months after the disposition hearing—was the 18-month review hearing. At an 18-month review hearing, the juvenile court shall order the return of the child to the parent's physical custody unless the court finds by a preponderance of the evidence that the return would create a substantial risk of detriment to the child's safety, protection, or physical or emotional well-being. (§ 366.22, subd. (a).) Father does not challenge the

6

juvenile court's finding that returning the minor to him would create a risk of detriment.

Section 366.22, subdivision (b), provides that a juvenile court may continue the case for up to six months after the 18-month review hearing if the court determines by clear and convincing evidence that the best interests of the child would be met by additional reunification services *and* the parent is making "significant and consistent progress in a court-ordered residential substance abuse treatment program," *or* the parent was a minor parent or nonminor dependent parent at the time of the initial hearing and is making significant and consistent progress in establishing a safe home, *or* the parent recently was discharged from incarceration. (§ 366.22, subd. (b).) Again, Father does not contend that he meets the statute's criteria. But even if he did, "[t]he court shall continue the case only if it finds that there is a substantial probability that the child will be returned to the physical custody of their parent . . . and safely maintained in the home within the extended period of time or that reasonable services have not been provided to the parent" and the court makes certain findings. (§ 366.22, subd. (b)(1)–(3).)

Perhaps acknowledging that the foregoing statutory criteria do not apply here, Father argues that the juvenile court should have sua sponte continued the hearing under section 352, notwithstanding the prolonged reunification period from which he had benefitted. That statute provides that the juvenile court may continue any hearing "beyond the time limit within which the hearing is otherwise required to be held" so long as the continuance is not contrary to the minor's interest. (§ 352, subd. (a)(1).) The statute is "an ' "emergency escape valve" ' " long recognized by California courts that is "available to all parents in exceptional situations in which the court determines that extending services and continuing reunification efforts

7

beyond 18 months is not contrary to the child's interests." (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 632.) "[A] juvenile court may invoke section 352 to extend family reunification services beyond [statutory] limits if there are 'extraordinary circumstances which militate[] in favor of' such an extension." (*In re D.N.* (2020) 56 Cal.App.5th 741, 762.) Even assuming that Father has not forfeited this issue by failing below to request a continuance under section 352, he simply has not demonstrated that this is the type of exceptional situation that warranted continuing the matter so that he could receive additional services.

We recognize that the "lack of affordable housing [may] constitute[] an 'external force over which [a parent] ha[s] no control' that warrant[s] an extension of reunification services beyond the statutory limits." (*In re D.N. supra*, 56 Cal.App.5th at p. 764.) But the juvenile court said that Father's lack of housing was only part of its concern and that it was also concerned "that [F]ather had mentioned things, such as if he was unable to work for several months, or unable to move for several months because of needing surgery—and I understand that that may no longer be necessary now—but that the plan was just, essentially, to have the children in a crib. And so that was one of my concerns with requesting the parents do a little bit more in the way of classes. And I know that that has—is something that [Father] has been looking into, or trying to do. However, it also appears that he is not able to really explain what he has learned in his classes to the social worker." The court further noted that both the minor and his younger brother were experiencing irritated bowels after eating food Father sometimes brought to visits, "and so that's even with some of the additional supports that [Father] has been provided." In his petition, Father focuses on all the indisputably positive steps he made during the reunification period and claims that

8

securing housing was the only thing standing in the way of reunification with the minor.  Given the other evidence, including that highlighted by the juvenile court, we cannot say that the court abused its discretion in declining to extend the reunification period.

Mother argues, and the Bureau disputes, that she has standing to challenge the termination of Father's reunification services since it will affect whether her parental rights may be terminated.  Assuming without deciding that she has standing, we do not find her arguments to be persuasive.  She contends that the juvenile court "misunderstood the breadth of its discretion under section 352."  The court likely did not specifically explain such discretion since it was not asked to extend the reunification period under the statute.  But the court cited *In re D.N. supra*, 56 Cal.App.741, which applied section 352 (*D.N.* at p. 756), an indication the court was aware of this discretion.  The court nonetheless stated that "there are very specific parameters that the law requires in order to extend [reunification] services to 24 months, and those standards simply just have not been met here, and I think that there is an awareness on all parties of that at this time."  In other words, the court was aware of its discretion but did not consider this to be a situation where extraordinary circumstances were present that would support extending additional services.

Like Father, Mother also stresses the progress Father made during the reunification period, efforts that the juvenile court praised.  But deferring to the juvenile court's factual findings, we cannot conclude that the court abused its discretion when it terminated services and scheduled a selection-and-implementation hearing.

9

## III.
### DISPOSITION

The petitions for extraordinary writ review are denied.  The request to stay the selection-and-implementation hearing scheduled for December 7, 2023, is denied as moot.

This opinion shall become final within three court days after it is filed. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Getty, J.*


*Judge of the Superior Court of the County of Solano, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*Mark E. v. Superior Court*  A168455

11