Filed 4/1/26  R.R. v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| R.R.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>    Respondent;<br><br>SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>    Real Party in Interest. | H053846<br>(Santa Clara County<br>Super. Ct. No. 23JD027605) |

R.R. (Father) has filed a petition for extraordinary writ challenging the juvenile court's order terminating services and setting the matter for a Welfare and Institutions Code section 366.26[1] permanency planning hearing.  Father contends that the juvenile court erred in denying his request to extend reunification services with his child, U.R. For the reasons set forth below, we conclude that the juvenile court did not abuse its discretion in denying Father's request.  We will therefore deny the petition.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code unless otherwise stated.

# I. FACTUAL AND PROCEDURAL BACKGROUND[2]

## A. *Original Proceedings*

U.R.'s mother (Mother)[3] and Father had a documented history of domestic violence. In August 2023, Father forced his way into Mother's home and hit her in the face with a metal object. Mother called the police, and Father fled. Mother told the police that Father had been incarcerated and released from prison two months prior; that he verbally abused her; and that he used methamphetamine. Soon thereafter, Father was arrested, and Mother obtained a restraining order against him.

At the time of the incident, U.R. was almost nine months old and resided with Mother. A few weeks after Father's arrest, police responded to another call at Mother's residence and arrested Mother for child endangerment and being under the influence of a controlled substance. Mother tested positive for various substances including methamphetamine.

Due to concerns over the parents' domestic violence and substance abuse, the Department placed U.R. in protective custody with a resource family home. The Department filed a petition pursuant to section 300, subdivision (b), alleging that the parents' methamphetamine use and domestic violence issues put U.R. at risk, and the juvenile court ordered U.R. detained. About a month later, the Department placed U.R. with paternal great aunt and uncle.

At the jurisdictional hearing, the juvenile court sustained the petition and ordered family reunification services for Father and Mother. Due to Father's transfers between

---

[2] Our unpublished opinion in Father's prior writ petition provides additional background of the proceedings in this dependency matter. (*R.R. v. Superior Court* (Feb. 14, 2025, H052729) [nonpub. opn.].) We take judicial notice of this unpublished opinion. (See *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 73, fn. 3 [appellate court may take judicial notice of its prior unpublished decision].) We recite where necessary information from our earlier opinion to resolve this petition.

[3] Because Mother did not challenge the order, we omit many of the facts related to her.

four prisons after the hearing, the social worker had difficulty maintaining contact with him. Father continued contacting Mother over the phone from prison despite the restraining order prohibiting such contact with Mother. The social worker scheduled telephone calls between Father and U.R. twice a week and stated in her report that the Department would refer Father to most of the classes and programs in his case plan upon his release from prison. While incarcerated, he completed substance abuse treatment classes.

Father testified at the six-month review hearing that the social worker advised him of services that could help him complete his case plan but did not advise him of any courses that would be available to him or how he could complete the classes while incarcerated. He also stated that he was unaware of any attempt by the social worker to contact the prison to set up courses. The court found that returning U.R. to his parents would create a substantial risk of detriment to his safety, protection, or physical or emotional well-being and that by clear and convincing evidence, the Department offered reasonable services to Father and Mother. The juvenile court terminated Father's reunification services and set a section 366.26 hearing.

**B. *Prior Petition for an Extraordinary Writ***

After the section 366.26 hearing, Father filed a notice of intent to bring a petition for extraordinary writ. Father asserted that substantial evidence did not support the juvenile court's finding that the Department provided him with reasonable reunification services. In February 2025, we granted Father's petition in our unpublished opinion, *R.R. v. Superior Court*, H052729. We concluded that the Department had failed to offer reasonable services during Father's incarceration and ordered the court to vacate its finding that reasonable reunification services were provided, to vacate the order terminating reunification services and setting a permanency and planning hearing, and to enter a new order finding that reasonable reunification services were not provided or

3

offered to Father and ordering the Department to provide Father with an additional period of reunification services.

## C. *Proceedings After Writ*

At the time of the remand hearing in March 2025, Father was still in prison. The court complied with our writ, ordering the Department to provide services for an additional six months, and adopting the Department's recommended case plan. The plan included parenting classes, counseling or psychotherapy addressing domestic violence and substance abuse and its effect on the child, a certified 52-week batterer's intervention program, random drug testing at least once a week, a 12-step program or other substance abuse self-help program, and a sponsor. Father was ordered to submit to a substance use assessment and to complete drug treatment programs recommended in the assessment, to participate in an aftercare drug treatment program, and to develop an aftercare relapse prevention plan. The court also ordered supervised video or phone calls with U.R. a minimum of twice per week while Father was incarcerated, and upon Father's release, supervised visitation for a minimum of twice per week for two hours each visit.

## D. *Father's Imprisonment*

After the hearing, the social worker made multiple attempts to ascertain what services were available to Father in prison. She contacted the prison's rehabilitation division to ask about family or other programs available to Father while in prison. A manager informed the social worker that another agency administered the program, told her to contact them, and provided her with their website. Despite leaving a voicemail and attempting to call the other agency numerous times, the social worker never received a response.

She also spoke with a lieutenant in the prison who explained that they could not provide any information about their programs because she was not an authorized contact for Father. The lieutenant told her that Father had to provide her authorization through his case manager. The social worker asked Father multiple times to contact his manager

4

to list her as an approved contact, but Father had difficulty reaching his manager. Ultimately, neither the prison nor the agency that administers prison programs provided the social worker any information about programs available to Father.

During the remainder of Father's incarceration, the social worker and Father had weekly meetings, and she allowed him to reschedule their calls to accommodate his schedule. Despite the social worker's flexibility, Father did not call on 10 scheduled dates. The social worker also mailed Father materials from the Department's parenting classes for him to review, scheduled supervised video and phone calls between Father and U.R. twice per week, and encouraged him to mail U.R. pictures and letters. Father called U.R. once or twice a month and wrote to him three times. Father reported to the social worker that during his time in prison he participated in a substance abuse program and support group, a parenting class, and a domestic violence class. He also admitted to having a physical altercation with another inmate in May 2025. The social worker expressed concern that Father did not apply the anger management and impulse control skills learned from his classes. Father was released from prison on parole in July 2025.

### E. *Father's Release from Custody*

#### 1. *Substance Abuse*

A few days after his release from prison, Father began an outpatient drug treatment program. As Father's case plan required weekly drug testing, the social worker discussed his testing requirements with him, and they practiced calling the testing phone number together. The social worker emphasized to Father the importance of calling the phone number daily and not missing any required tests. In August 2025, Father missed three drug tests and one meeting with the social worker. Father claimed his phone was broken and that he went to the incorrect address for the first two tests. He did not have an explanation for missing the third test.

The social worker asked Father to complete a drug test at their meeting, and he tested positive for methamphetamine. Father completed a second drug test about a week

later and again tested positive for methamphetamine. He told the social worker that he was struggling and accepted responsibility for relapsing and admitted that he had used methamphetamine with Mother. The social worker expressed her concern that Father had used substances with Mother, "as that was one of the factors that led to the case coming to the [Department's] attention" and that they were violating the restraining order.

In the following month, Father had four negative drug test results. He also attended Narcotics Anonymous meetings and three meetings per week in a substance abuse program. His outpatient program reported that he had good overall adherence to treatment, attended group and individual sessions, completed assessments, and worked on coping skills and relapse prevention.

### 2. *Domestic Violence*

To address his domestic violence issues, Father's case plan required participation in a 52-week batterer's intervention program. However, he did not enroll in the program because his parole officer wanted him to focus on his sobriety first and start the program afterwards. The social worker explained the importance of addressing the domestic violence issue, because it was one of the concerns leading to the dependency.

The case plan also required Father to enroll in therapy to address his domestic violence and substance abuse problems. The social worker gave Father a counseling service's contact information to complete an assessment, and Father enrolled in therapy. When the social worker contacted Father's therapist about his treatment, his therapist said that he had not signed a release of information although Father told the social worker that he completed one. The therapist could not provide the social worker with a report about his progress.

### 3. *Parenting Classes and Visitation with U.R.*

The social worker referred Father to parenting classes and referred him again after he missed classes. The social worker also scheduled supervised visitation between Father and U.R. and encouraged him to continue weekly phone and video calls with U.R.

6

Despite the social worker's encouragement, Father missed several scheduled calls with his son. U.R. continued living with paternal great aunt and uncle, and the Department reported that he was thriving in their care.

Based on Father's minimal progress with his case plan, the Department recommended terminating services and setting a section 366.26 hearing. Despite the classes that Father had completed while in custody, the Department reported that he had not applied the skills he learned or practiced self-control, which resulted in a physical altercation with another inmate during his incarceration. Noting that Father also continued to have contact with Mother despite the restraining order, and had not started a 52-week batterer's intervention program, the Department expressed concern that Father had not addressed his history of domestic violence. Because of Father's use of methamphetamine with Mother, the Department opined that he lacked "an insightful understanding of the serious nature of [his] substance abuse and what steps [he could] take to protect [his] sobriety and prevent relapse." Father's "inappropriate and unsafe decisions" demonstrated his "own immediate desires over the long-term goal of promoting [U.R.'s] best interests and focusing on steps for safe reunification with him." Because of Father's "demonstrated severe and long-term substance abuse issues," the Department stated that it "has had no significant and consistent period of time to observe [Father's] sobriety and understand his insight into past relapses and how he may respond more protectively in the future."

### F. *24-Month Review Hearing*

Father disagreed with the Department's recommendation to terminate services and requested that the court order three additional months of services. At the 24-month review hearing held on October 16, 2025, the social worker and Father testified. After the court qualified the social worker to testify as an expert in risk assessment and provision of reunification services, she testified about circumstances leading to the dependency proceedings, Father's relationship with U.R., and his progress with his case

plan. The social worker noted that the dependency began due to the parents' substance abuse and domestic violence. While she recognized that Father had regular and positive supervised visits with U.R., with Father playing with and addressing U.R.'s needs, she was not willing to recommend unsupervised visits. Her reasons were multiple. First, she observed that Father's recovery was recent relative to his lengthy substance abuse and criminal history. She further noted that he had not addressed his domestic violence issues. He had failed to participate in a 52-week batterer's intervention course and continued to be in contact with Mother despite a restraining order prohibiting contact. Additionally, she expressed concern that Father had failed to internalize the lessons from the programs he had participated in. He had been in a physical altercation with another inmate while in custody and relapsed soon after his release. To feel more confident in Father's recovery, the social worker said that Father needed to have consistent negative drug tests, find a sponsor, participate in a 52-week batterer's intervention program, and utilize the skills from the program.

Father testified and acknowledged his long history of drug use. He began using cocaine and methamphetamine at 14 years old and had completed multiple rehabilitation programs. At some point, Father had been sober for two years. He also admitted to having anger issues leading to multiple altercations, including his violence with Mother.

He testified, however, that he had been trying to address these problems by participating in substance abuse and domestic violence programs during his incarceration and in substance abuse treatment after his release from prison. Father believed his recovery would be different this time because his desire to be with his son was a great motivator, because he was learning skills to better deal with the triggers of his anger and addiction, and because he had met supportive people who "had [his] back." Despite his desire to succeed, Father admitted that he missed required drug tests and had tested positive for drugs. He also admitted to a two-week relapse into methamphetamine use in

8

August 2025, where he used every other day. Despite that setback, Father testified that after those two weeks, he had been clean since August 19, 2025.

At the conclusion of the hearing, Father asked the court to find that the Department had not provided reasonable services. Father argued that although the dependency had been proceeding for 24 months, because of the Court of Appeal's decision that Father had not been provided reasonable services prior to remand, Father had only been participating in services for six months at that point. Father stated that he had been honest about his relapse, had actively participated in outpatient treatment, had negative drug tests for one month, had attended substance abuse meetings, had found a recovery support group, and was living in a transitional housing unit. Both Father and the Department agreed that Father had made significant progress in his case plan, but Father urged the court to conclude that services were not reasonable because the social worker had not actually referred him to the 52-week batterer's intervention program and that one of the parenting classes required by his case plan did not start until the following year. Father wanted the opportunity to participate in these additional programs and asked the court to extend his services by three months so that he could do that.

Acknowledging that the court did have discretion to grant Father's request for additional services pursuant to section 352, the Department disagreed with Father's request. Although the Department commended Father for his progress since his release from incarceration, it argued that it would not be in U.R.'s best interests to grant Father an additional three months. The Department cited the length of the pending dependency and its assessment that Father would not be ready to have unsupervised visits with U.R., much less have U.R. safely returned to his care within three months. The Department asked that the court adopt the recommendation and terminate services because Father had received reasonable services over the preceding six months, and had declined to participate in the 52-week domestic violence program.

9

Subsequently, the court requested the parties to provide briefing on whether the 12-month review or 24-month review standards should apply to the court's findings. The court was unsure whether it should treat the case as a 12-month review hearing based on the months of reunification services or as a 24-month review hearing based on the date that the court ordered U.R. detained.

At the next hearing, the court made findings under both the 24-month and 12-month review standards, finding by clear and convincing evidence[4] that the Department offered reasonable services to Father, and by a preponderance of the evidence that returning U.R. to Father would create a substantial risk of detriment to U.R.'s safety, protection, and physical or emotional well-being.

The court recounted the numerous efforts by the Department to work with Father both in and out of prison, noting the social worker's flexibility with Father's prison schedule, her many meetings with Father, and her efforts to facilitate visitation with U.R. The court also reviewed the programs Father had completed in his case plan. However, the court expressed concern over Father's apparent failure to internalize the lessons from these programs, referencing Father's physical altercation in prison, his violations of the restraining order by continuing to have contact with Mother, and his relapse after release from custody. The court found that although the social worker had emphasized the importance of enrolling in a domestic violence program, Father was "resolute" in declining a referral for a 52-week batterer's intervention program because his parole officer wanted him to focus on addressing his substance abuse issues. The court also enumerated other aspects of the case plan where Father had fallen short, specifically his failure to provide a release to the Department for his therapy sessions which left the Department without information about his progress, his failure to call regularly to

_____

[4] Although the court referred to different standards between a 12-month review and 24-month review hearing, the court applied the same evidentiary standard to its finding about whether the Department provided reasonable services to Father.

10

schedule and to attend his drug tests, and his two positive drug tests since his release from custody. The court concluded that "despite services, both in custody and out of custody, [Father] has relapsed and is in the early stages of recovery."

Because of the early stage of Father's recovery, the juvenile court found no good cause for a continuance and denied Father's request to extend his reunification services. The court gave substantial weight to U.R.'s need for prompt resolution of custody status, his need for a stable environment, and the damage to him of prolonged temporary placements. The court also concluded that there was no substantial probability that U.R. would be returned to Father within six months, and that a section 366.26 hearing would be in U.R.'s best interests. The court terminated Father's reunification services and set a section 366.26 hearing.

Father timely filed a notice of intent to bring a petition for a writ of mandate.

## II. DISCUSSION

In his petition, Father contends that the juvenile court erred in denying his request to extend the reunification period by three months.[5] The Department argues that the juvenile court did not abuse its discretion in denying Father's request. Our careful review of the record does not support Father's contention.

### A. *Legal Principles & Standard of Review*

Pursuant to section 352, a court may, but is not obligated to, extend reunification services past the statutory 18-month limit for good cause where a parent has not received reasonable services. Courts must balance family reunification interests with a child's need for a timely and stable placement. (*Michael G. v. Superior Court* (2023) 14 Cal.5th

---

[5] Although Father references the juvenile court's detriment finding in his petition, Father does not provide any argument demonstrating that the juvenile court's detriment finding was erroneous. We therefore consider the contention abandoned by Father. (See *Bradley v. Butchart* (1933) 217 Cal.731, 747 [explaining that " '[c]ontentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned.' [Citations.]"].)

609 (*Michael G.*).) In *Michael G.*, the Supreme Court explained the right to a continuance is within the juvenile court's discretion: "[W]hile the dependency law does not categorically forbid courts from extending services past 18 months, neither does it require them to do so in every case in which they find reasonable services were not offered in the most recent review period. Rather, once a child has already been out of the parent's custody for 18 months, the law vests the juvenile court with responsibility for determining how to proceed after considering the circumstances of the case and the best interests of the child." (*Id.* at p. 627.) The court explained that "the time limit reflects a considered legislative choice: '[I]n order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate.' [Citation.] If the child has already been out of the parent's custody for 18 months and still cannot be safely returned, the statute instructs that the court ordinarily must proceed to schedule a permanency planning hearing." (*Ibid.*) "[W]hether to grant a continuance is a decision reviewed for abuse of discretion, a deferential standard. [Citation.]" (*Id.* at p. 637.)

### B. *No Error in Juvenile Court Denying Extension of Reunification Services*

While Father states in a conclusory manner that we could find services were inadequate, he does not argue with any specificity that the services he received in the most recent six-month period were, in fact, inadequate. Instead, he asserts that the juvenile court erred in denying his request for an extension by weighing more heavily U.R.'s need for prompt resolution over the child's "need for reunification." Father contends that the delays during the proceedings were beyond his control and his relapse should not be dispositive. We conclude that the juvenile court did not abuse its discretion in denying Father's request for an extension of services.

After this court reversed the prior order terminating services, Father received six additional months of services and made some progress in his case plan. However, his performance demonstrated that he was unable to provide a secure home for U.R. at the

12

time of the 24-month hearing.  To justify an extension of services, generally a "parent must be making 'significant and consistent progress' either in the substance abuse treatment program, if applicable, or in establishing a safe home for the child.  [Citation.] Further, the court must decide (1) that extending services would be in the 'best interests of the child,' and (2) either that there is a 'substantial probability' that the child will be returned to the parent's custody and safely maintained in the home during the extension period, or that 'reasonable services have not been provided to the parent.'  [Citation.]" (*Michael G.*, *supra*, 14 Cal.5th at p. 628.)

At the time of the 24-month hearing, Father had completed some of the case plan designed to address his anger and domestic violence, but he elected not to enroll in the 52-week domestic violence program because his parole officer encouraged him to focus on his substance abuse issues.  The Department was also unable to assess Father's progress in therapy because he did not provide a release to the social worker.  There was evidence that despite the courses Father completed, he was not internalizing the lessons the programs offered him.  He had an altercation while incarcerated, and he violated the restraining order by continuing to have contact with Mother both by phone from prison and in person on his release.  He admitted he used methamphetamine with her.  He tested positive for drugs and relapsed into methamphetamine use for a period of time, although he also maintained a period of sobriety for at least a month thereafter.

Based on Father's recent relapse, the newness of his recovery, and his choice not to enroll in the 52-week domestic violence program, the Department was concerned that U.R. could not be safely returned to Father, even if services were extended for three months.  The court agreed and concluded that the services provided to Father were sufficient, but there was not a substantial probability that U.R. could be safely returned to Father's care after the three-month period.  On this record, we conclude that the court did not abuse its discretion in making this determination.

Nor did the juvenile court improperly weigh U.R.'s need for prompt resolution as Father contends. The court was required to consider U.R.'s best interests, which included prompt resolution of the dependency case for U.R.'s stability and to prevent the harm attendant to custodial uncertainty. (*Michael G.*, *supra*, 14 Cal.5th at p. 628.) "[T]he court may continue any hearing . . . provided that a continuance shall not be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§352, subd. (a)(1).) A speedy resolution was a significant consideration in determining U.R.'s best interest. "[P]roviding children expeditious resolutions is a core concern of the entire dependency scheme." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 847, fn. 4.)

U.R.'s dependency proceedings commenced when he was nine months old, and by the time of the November 2025 hearing, more than two years had elapsed. (See *In re Lauren R.* (2007) 148 Cal.App.4th 841, 855 ["The passage of time is a significant factor in a child's life."].) U.R. had lived with his paternal relatives for over two years, and the Department reported he was thriving in his placement. "[T]he longer a successful placement continues, the more important the child's need for continuity and stability becomes." (*Ibid.*) Father offers no legal or factual support for the contention that U.R.'s interest in reunification with Father outweighed the child's need for prompt resolution of his custodial status. Given the length of time elapsed from the inception of the dependency, the court did not err in giving great weight to U.R.'s need for stability in determining his best interests. (*Ibid.*)

Although a continuance under section 352 may only be granted upon a showing of good cause, Father has shown no good cause for a continuance. (§ 352, subd. (a)(2).) "In the past, California courts have found good cause in a number of cases where ' "extraordinary circumstances" ' justified an extension and doing so was consistent with

14

the child's best interests. [Citation.] 'Extraordinary circumstances exist when "inadequate services" are offered by the child welfare agency or "an external force over which [the parent has] no control" prevented the parent from completing a case plan.' [Citation.]" (*Michael G.*, *supra*, 14 Cal.5th at p. 632.) Although Father argued below that services were inadequate, he makes no such factual or legal argument on appeal.

Father has not demonstrated any extraordinary circumstances justifying an extension of services. No external forces prevented him from completing his case plan. Less than one month after his release from prison, Father missed three drug tests and tested positive for methamphetamine twice. He admitted to relapsing into drug use. He elected not to pursue the 52-week domestic violence program at his parole officer's urging, and was in contact with Mother despite the court's restraining order. Father's "failure of the case plan was not caused by inadequate services or an external force over which [Father] had no control," but rather his own choices. (*Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1389 ["The juvenile court reasonably could conclude such a relapse does not constitute the extraordinary circumstances or special needs necessary to support an extension of family reunification services beyond the statutory limit."].)

We commend Father for the efforts he has made to address his long history of substance abuse. We recognize the challenges of addiction and the cycle of domestic violence. However, our task is to determine whether the juvenile court abused its discretion when it declined to grant Father the three-month continuance he proposed. Because Father failed to significantly address his domestic violence issues and was early in the substance abuse recovery process, the record supports the juvenile court's determination that Father would not have been able to remediate the multitude of issues that led to the establishment of a dependency and to safely reunite with U.R. within the requested three months. Given that U.R.'s best interests favored the resolution of his custody status, Father's progress in his case plan was incomplete, and U.R. could not be

safely returned to Father's home during the extension period, we conclude that the court did not err when it denied Father's continuance request.

### III.    DISPOSITION

The petition for extraordinary writ is denied.

_____

Greenwood, P. J.

WE CONCUR:

_____

Danner, J.

_____

Bromberg, J.

H053846 R.R. v. Superior Court