Filed 12/24/24  N.A. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| N.A.,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>        Respondent;<br><br>STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>        Real Party in Interest. | F088810<br><br>(Stanislaus Super. Ct. No. JVDP-23-000135)<br><br>**OPINION** |

## THE COURT*

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Annette Rees, Judge.

N.A., in propria persona, for Petitioner N.A.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

\*        Before Franson, A.P. J., Peña, J. and Smith, J.

Petitioner N.A. (mother) seeks an extraordinary writ (Cal. Rules of Court,[1] rule 8.452) from the juvenile court's orders issued at an 18-month review hearing terminating reunification services and setting a Welfare and Institutions Code[2] section 366.26 hearing as to her child, L.K. (16 months old).  Mother contends the juvenile court erred in finding there was a substantial risk of detriment in returning the child to her care and custody under the provisions of family reunification services.  The petition is dismissed and the request for a stay is denied.

## STATEMENT OF CASE AND FACTS

On August 3, 2023, nine days after L.K.'s birth, a dependency petition was filed by the Stanislaus County Community Services Agency (agency) alleging mother and B.K. (father) willfully or negligently failed to provide adequate care for and protect L.K. At that time, L.K. was already detained and still in the hospital and being monitored after being born positive for amphetamines, methadone, and fentanyl.

*Detention*

A detention report prepared by the agency was filed on the same day as the dependency petition recommending L.K. be detained in a suitable placement pending further hearings.  The report further noted that the agency was exploring placement of L.K. with a paternal relative upon his discharge from the hospital, and summarized allegations that both mother and father had a history of drug abuse, along with documenting lengthy criminal histories for both.  At the detention hearing held on August 4, 2023, counsel was appointed for all parties, L.K. was ordered detained, and a jurisdiction/disposition hearing was scheduled for September 14, 2023.

---

[1]    All further rule references are to the California Rules of Court

[2]    All further statutory references are to the Welfare and Institutions Code.

*Jurisdiction/Disposition*

Prior to the jurisdiction/disposition hearing, the appropriate notices were sent out and a compliance report was prepared and filed addressing the agency's attempts to comply with the Indian[3] Child Welfare Act (ICWA). Although the report recommended the juvenile court enter a finding that there was no reason to know L.K. was an Indian child, there was a description of the contacts that had been made with certain tribes and the status of those contacts. The report further documented family members who had been contacted and the potential information they provided about possible tribal connections. Finally, the report summarized the responses that had been received from the various tribes contacted. In the end, the report recommended the court conclude there was no reason "to know the child is an Indian child."

The jurisdiction/disposition hearing was continued to September 18, 2023. At the hearing, the juvenile court concluded proper notices had been sent, and there was no reason to believe L.K. was an Indian child. The court adjudged L.K. a dependent as alleged in the petition, ordered reunification services for mother and father, and set a six-month review hearing for March 11, 2024. The court also referred the parties to dependency drug court (DDC) and set a progress review hearing in November 2023.

*Review Hearing and DDC*

A review of L.K.'s dependency status was held on November 2, 2023. Prior to the hearing, a status report was filed documenting the progress each parent had made toward visitations and parenting classes. Mother had been regularly visiting L.K. and had attended two out of four group parenting classes and all individual sessions. Father had also visited regularly with L.K. but was having trouble scheduling the parenting classes.

---

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1, disapproved on other grounds in *In re Dezi C.* (2024) 16 Cal.5th 1112.)

Father occasionally participated in substance abuse counseling group sessions and had tested negative for drugs once. L.K. was reported to be growing well and was described as a happy baby who saw his parents regularly. The minute order from the review hearing indicated that dependency status would continue and that the parents were doing well.

With respect to participation in DDC, mother was initially found to be in compliance, showing progress as fair, but then a few weeks later was reported to be struggling. A hair follicle test conducted on mother in November showed positive results for methamphetamines, amphetamines and fentanyl. On November 26, 2023, father became incarcerated and was not availing himself of the services recommended by DDC.

In January 2024, Sierra Vista Child and Family Services, the agency providing counseling services to father, informed him that his case was being placed on a hold status due to the fact they had lost contact with him. Soon thereafter, the juvenile court appointed a guardian ad litem to represent father in the dependency matter. Mother's progress in DDC improved during this time to fair trending to good following a relapse. However, in February, before the six-month review hearing, mother was said to be struggling again, not attending group parenting classes, but staying consistent with individual sessions. In March, mother was again designated as "struggling" due to the prior relapse. Efforts were being made to place mother in some type of residential treatment facility.

*Six-Month Review Hearing*

At the six-month review hearing held on March 11, 2024, the juvenile court adopted the findings made in the status report and approved the case plan contained in that same report. As a result, the court found returning L.K. to the custody of his parents would create a substantial risk of detriment, necessitating a continuation of the current placement. The court further found no new inquiries had revealed L.K. to be an Indian

4

child, and that the services and visitation provided to the parents should be continued. The minute order for this hearing stated the progress for both mother and father toward reunification was "limited."

*Progress in DDC*

Following the six-month review hearing, father was released from jail, but failed to make immediate contact with case workers. Mother was attending group parenting and individual sessions but was only designated as making "fair" progress. At one point, mother again tested positive for fentanyl and was unable to visit L.K. due to COVID-19. On May 21, 2024, during a DDC hearing, it was reported mother failed to report to a residential facility that was holding a bed for her, and that she was now "struggling" with her recovery. Father did not attend this hearing, indicating he could not get a ride. Information provided at the hearing revealed father had not met with case workers about his reunification plan since his release from jail.

*Request to Change Court Order*

On May 22, 2024, the social worker assigned to the case filed a request to change court order, asking that reunification services be terminated. The request stated that despite the continuation of reunification services at the six-month review hearing, mother and father failed to engage in reunification services. Specifically, mother failed to participate in a residential program for drug treatment and failed to take responsibility for her actions. The request further stated L.K. deserved stability and termination of reunification services would allow for the preparation of a permanent plan. An attachment to the report noted father admitted to a lack of stability and that he had done nothing to mitigate his problems.

Unrelated to this request, DDC issued a minute order on June 18, 2024, stating mother was being given "one last chance" after testing positive following a urine analysis. Apparently, mother had finally entered a residential program, but then

5

self-discharged after going through detox. The positive result came from the testing done at the time of discharge. Mother was eventually terminated from DDC on July 23, 2024, for not being in compliance.

On July 15, 2024, an addendum report was filed recommending L.K. remain a dependent of the juvenile court and family reunification services be terminated. The report additionally recommended that a section 366.26 hearing be set within 120 days to establish a permanent plan of adoption. While a contested hearing on the section 388 petition was originally scheduled for July 26, 2024, it was later trailed to September 16, 2024, to coincide with the 12-month review hearing.

*Twelve-Month Review Hearing*

The status report filed for the 12-month review hearing made essentially the same recommendation that was made following the filing of the section 388 change of court order request, that family reunification services be terminated, and a section 366.26 hearing be scheduled to consider a permanent plan of adoption. The report also noted that the Chiricahua Apache Nation had been added as a party to the case, even though it was not a federally recognized tribe and an earlier finding had been made that L.K. was not an Indian child under ICWA.

While the actual hearing started on September 16, 2024, it was concluded on October 10, 2024. The parties and counsel appeared on the first day, including a tribal representative. While the record is confusing on this point, mother appeared, and father did not appear. It was revealed at this time that both mother and father were incarcerated, and that father was being uncooperative. After the juvenile court found proper notices had been provided, the matter was trailed. At this time, the agency asked to withdraw its section 388 petition in light of this contested hearing. Furthermore, although a finding had been made that L.K. was not an Indian child under ICWA, the juvenile court expected the agency to continue to work with the local tribe to obtain their input about

6

placements as intended under section 306.6,[4] which addresses children who might be connected to tribes not recognized federally under ICWA.

After the parties submitted on the status report and addendums provided to the juvenile court as required by section 366.21, the attorneys representing mother and father made "offers of proof." Mother's attorney stated that if mother were to testify she would state she really wants the opportunity to reunite with her child. Her attorney stated mother understood the current circumstances were difficult, but wanted the court to know that she was willing to do whatever was considered necessary. Father's attorney offered more detail saying:

> "[H]e has engaged in services during his previous time being incarcerated, and which he provided certificates of completion, including parenting classes and anger management, to the social worker. He has wanted to engage in services for the Agency but has struggled to fully engage.

> "He has asked for services while being incarcerated, including mental health services; however, he has never been provided with a psychiatrist or the option for a mental health evaluation, nor has he been provided any packets to complete during his incarceration.

> "He understands the situation and the things being said, and he acknowledges his struggles. But it is his position that the Agency is saying he hasn't participated at all when he has, and he hasn't been provided services when he's asked for them.

> "He has tried to consistently visit and did visit every time that he could."

---

[4] Section 306.6, subdivision (a) provides: "In a dependency proceeding involving a child who would otherwise be an Indian child, based on the definition contained in subdivision (b) of Section 224.1, but is not an Indian child based on the child's Indian tribe not having federal recognition, as described by paragraph (4) of subdivision (a) of Section 224.1, the court may permit the tribe from which the child is descended to participate in the proceeding upon request of the tribe."

The only testimony taken at the hearing was provided by the social worker assigned to the case. Social worker Diana Munoz-Torres testified that her primary role in this case was to work with the parents to complete their reunification plan. Munoz-Torres explained that when a parent is incarcerated, they are limited to whatever services are available in the prison or jail. Father was incarcerated twice during the period of reunification. Munoz-Torres testified she encouraged father to sign up for any services available in the jail and that she provided him with parenting packets during his first period of incarceration. Munoz-Torres stated that father completed about half of the parenting packets, and father informed her he had completed various programs in jail, but failed to provide certificates when asked. Munoz-Torres was not aware of father participating in any services during his second period of incarceration. When father was not incarcerated, Munoz-Torres testified she would always encourage father to engage in services, but that while he was initially motivated, he would eventually give up, then claim he would get services on his own, which to her knowledge he did not follow through with.

After giving the parties the opportunity to make their arguments, the juvenile court ruled as follows:

> "In this case, the parents, unfortunately, have been inconsistent. They have made attempts, certainly. There has been some visitation while they're out of custody to try to visit with [L.K.]. So as far as that factor, there is some visitation there.

> "However, the second factor being significant progress in addressing the issues and substantial progress in their case plan, their Court-ordered treatment plan, there have been substantial lapses as far as engagement, as far as counseling, parenting, addressing their case plan even when they're out of custody.…

> "The Court also offered [DDC] as has been talked about.… So this Court is only looking at the fact that they were terminated from drug court in the confines of substantial progress and addressing these issues while

8

they are out of custody.  Even with that assistance, they were terminated from [DDC].

"There's been some recent positive testing, and there has been a lack of engagement in the services that were available to them, both in and out of custody.…

"So I am finding that there is a preponderance of the evidence that as of today, [L.K.'s] return to the custody of his parents would create a substantial risk of detriment to his physical, emotional well-being, his protection, and … there is no reasonable means to protect him without continuing that removal.

"There is also clear and convincing evidence that reasonable services have been offered or provided to these parents in this case."

The court then noted this was not an ICWA case but one involving a state recognized tribe who participated in the proceedings.  The court adopted the recommendations in the agency's report, concluding L.K.'s placement was necessary and appropriate, and that the agency had complied with the case plan.  Finally, because the parents' progress had only been "limited," reunification services were terminated, setting in motion the need for a permanent plan.

## DISCUSSION

In her petition to this court, mother focuses her challenge on the findings addressing the completion of programs and services offered by the agency, and her visits with L.K.

## I.     Relevant Legal Principles and Standard of Review

California's dependency system is designed "to protect children from harm and to preserve families when safe for the child."  (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.)  During the reunification period of a dependency case, the primary focus is on preserving the family by addressing the issues that led to dependency jurisdiction.  (*Rita L. v. Superior Court* (2005) 128 Cal.App.4th 495, 507.)  That means until reunification services have been terminated, "family reunification is the goal and the

9

parent is entitled to every presumption in favor of returning the child to parental custody." (*Tracy J*., at p. 1424.) Once reunification services are terminated, however, the focus shifts to finding the child a safe and permanent home. (*Ibid*.)

"When a child is removed from a parent's custody, the juvenile court ordinarily must order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843.) The duration of services depends on the age of the child when initially removed. (§ 361.5, subd. (a)(1).) Court-ordered services must be provided for six months from the dispositional hearing to the parents of a child who was under three years of age when initially removed. (§ 361.5, subd. (a)(1)(B).) The court must advise the parents that reunification services may be terminated after six months if they fail to participate regularly in any court-ordered treatment programs or to cooperate or avail themselves of the services provided. (§ 361.5, subd. (a)(3)(C).) The child's status, and the question of whether services should be extended for an additional period, must be reconsidered no less frequently than every six months. (§ 366, subd. (a)(1); *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1009.)

At each review hearing, "there is a statutory presumption that the child will be returned to parental custody." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.) A court, therefore, must return the child to parental custody at the six-month review hearing unless it finds by a preponderance of the evidence that doing so would "create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e)(1).) A parent's failure to participate regularly and make substantive progress in court-ordered treatment programs constitutes prima facie evidence that return would be detrimental. (§ 366.21, subd. (e)(1).)

If the child is not returned to parental custody, the juvenile court is required to determine whether "reasonable services that were designed to aid the parent … in

10

overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent .…" (§§ 366.21, subds. (e)(8) & (f)(1)(A), 366.22, subd. (a)(1).)  "If … the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a [section 366.26] hearing .…" (§ 366.21, subd. (e)(3).)  The court, however, is not compelled to terminate reunification services and set a section 366.26 hearing if it makes the requisite findings.  It simply has the discretion to do so.  (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 176.)  If, however, "the court finds there is a substantial probability that the child … may be returned to [his or her] parent or legal guardian within [six] months or that reasonable services have not been provided …, the court shall continue the case to the 12-month permanency [review] hearing."  (§ 366.21, subd. (e)(3).)

We review for substantial evidence a juvenile court's factual findings supporting an order terminating reunification services at a six-month review hearing.  (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688.)  Under this standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders.  [Citation.]  'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' "  (*Id.* at pp. 688–689.)  When examining the evidence supporting the trial court's findings, we "bear in mind that clear and convincing evidence was required in the trial court."  (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239 [disapproved on other grounds in *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631, fn. 8].)

## A.    The Extraordinary Writ Petition

When the juvenile court terminates reunification services and sets a section 366.26 hearing, as occurred here, a parent may challenge the court's rulings by filing an

11

extraordinary writ petition. Rules 8.450 through 8.452 set forth guidelines pertaining to extraordinary writ petitions. The purpose of these writ petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is petitioner's burden to raise claims of reversible error or other defect and present legal argument, citing to the pertinent evidence in the record. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

### B.    Application

In her petition to this court, mother raises no specific claims of error by the juvenile court. Instead, mother notes that she was unable to provide proof of all the services she participated in while reunification services were offered because she was incarcerated at the time the 12-month reviewing hearing was held. At the time of the filing of her petition, she was still incarcerated and unable to provide proof of the services she completed. was filed. Mother also complains that she is unable to communicate with her attorney.

Our review of the record reveals detailed documentation of not only the efforts made by the agency to comply with ICWA, but also with respect to the participation of mother in the various types of reunification services provided. Mother participated in the 12-month hearing and raised no concerns about the representations made by the agency as to her participation in reunification services. However, mother does not address her abuse of drugs or her termination from DDC.

12

We believe substantial evidence supports the findings made by the juvenile court, resulting in the termination of reunification services. Mother's participation in reunification services were documented as well as her participation in DDC, and her failure to engage in the various programs offered. The time to challenge the evidence presented by the agency to support its recommendations was at the 12- month hearing. Evidence must be countered with evidence, not just representations that the evidence is incorrect. Mother failed to do this at the 12-month review hearing. We conclude mother's petition fails to comport with the procedural requirements of rule 8.452 regarding extraordinary writ petitions and dismiss the petition.

## **DISPOSITION**

The petition filed by mother requesting an extraordinary writ is dismissed. This opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A). The accompanying request for a stay of the section 366.26 hearing is denied.

13